HEUBLEIN, INC., a corporation Munson Road Farmington, Connecticut 06032 (203) 677–4061, Plaintiff,

v.

FEDERAL TRADE COMMISSION; and James C. Miller, III, Chairman; David A. Clanton, Member; Michael Pertschuk, Member; and Patricia P. Bailey, Member; and Thomas J. Campbell, Director of the Bureau of Competition; as officers of the Federal Trade Commission, 6th Street & Pennsylvania Avenue, N. W., Washington, D. C. 20580 (203) 963–1100, Defendants.

Civ. A. No. H–82–284.

United States District Court,
D. Connecticut.

March 16, 1982.

Richard M. Reynolds, Thomas J. Groark, Jr., Day, Berry & Howard, Hartford, Conn., Ray A. Jacobsen, Jr., Ralph J. Savarese, Howrey & Simon, Washington, D. C., George J. Caspar, Gen. Counsel Heublein, Inc., Farmington, Conn., for plaintiff.

Steven A. Newborn, W. Dennis Cross, Asst. Gen. Counsel for Litigation, F. T. C.,

Washington, D. C., Donna L. Fatsi, Asst. U. S. Atty., Alan H. Nevas, U. S. Atty., Hartford, Conn., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CLARIE, Chief Judge.

This matter having come on to be heard upon the motions of the plaintiff Heublein, Inc. ("Heublein"), and the Court having held hearings on March 15, 1982, the Court pursuant to *Fed.R.Civ.P.* Rule 52, hereby sets forth the findings of fact and conclusions of law which constitute the grounds of its action.

## I. FACTUAL BACKGROUND

### A. *The Parties*

1. Plaintiff Heublein, is a Connecticut corporation having its principal place of business at Farmington, Connecticut. Heublein is engaged in the production and distribution of distilled spirits and wines, the operation and franchising of Kentucky Fried Chicken, H. Salt and Zantigo Mexican-American quick service restaurants, and the production and distribution of other specialty food products.

2. Defendant Federal Trade Commission ("Commission") is an agency of the United States and is organized and existing pursuant to the Federal Trade Commission Act, 15 U.S.C. §§ 41 *et seq.*, as amended, with its principal office at 6th Street and Pennsylvania Avenue, N. W., Washington, D. C. The Commission is one of two federal agencies responsible for administering the premerger notification program established by the Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub.L.No.94–435, 90 Stat. 1390, 15 U.S.C. §§ 18a *et. seq.* ("H–S–R Act").

3. Defendant James C. Miller, III is Chairman, and defendants David A. Clanton, Michael Pertschuk and Patricia P. Bailey are members of the Federal Trade Commission. Defendant Thomas J. Campbell is Director of the Bureau of Competition of the Federal Trade Commission. The Bureau of Competition is the organizational unit of the Commission responsible for administering the premerger notification program under the H–S–R Act. The Commission has delegated to the Director of the Bureau of Competition the power to permit persons to consummate acquisitions which are subject to the H–S–R Act prior to the expiration of the waiting period prescribed in that Act.

### B. *Hart-Scott-Rodino Act and Premerger Notification Regulations Relevant to This Case*

4. Title II of the H–S–R Act, enacted in 1976, added section 7A to the Clayton Act, 15 U.S.C. § 18a, which established a new premerger notification program governing certain acquisitions of voting securities or assets. The legislative purposes of Title II were to provide the Commission and the Antitrust Division of the United States Department of Justice ("Department"), in advance of an acquisition: (a) information concerning both the nature of the particular transaction and the competitive effects of the acquisition and (b) sufficient time to analyze the competitive effects of the acquisition to determine whether to challenge the acquisition prior to its consummation. H.R.Rep.No.94–1373, 94th Cong., 2d Sess. at 5–8, and S.Rep.No.94–803, 94th Cong., 2d Sess. at 69, U.S.Code Cong. & Admin.News 1976, p. 2572.

5. If a stock acquisition is subject to the H–S–R Act, both the acquiring and acquired parties must: (a) file with the Commission and the Department a premerger notification form and exhibits, which report the required information concerning their businesses and the details of the particular transaction; and (b) wait a prescribed period before consummating the acquisition, subject to the Commission's authority to extend or reduce that waiting period. 15 U.S.C. § 18a(a), (b), (d)(1).

6. After a premerger notification form and exhibits have been filed by an acquiring party with both the Commission and the Department, personnel of those agencies confer and decide which agency will assume

responsibility for analyzing those materials to determine whether the particular acquisition is likely to lessen competition or whether additional information or documents are required to make that determination.

7. In the case of an acquisition of voting securities on the open market through a national securities exchange or through private transactions, the waiting period under the Commission's premerger notification rules expires on the thirtieth day after the acquiring party has filed its premerger notification form and exhibits, unless: (a) the waiting period is terminated, by the Commission and the Department, prior to the expiration of the thirty-day period; or (b) prior to the expiration of the thirty-day period, the Commission or the Department (as the case may be) requests additional information or documents from either the acquiring or the acquired party. 15 U.S.C. § 18a(b)(1)(B), (2). Such a request for additional information or documents extends the H–S–R waiting period until the twentieth day following the agencies' receipt of such additional information or documents. 15 U.S.C. § 18a(e).

8. As amended by the H–S–R Act, section 7A(b)(2) of the Clayton Act expressly authorizes the Commission and the Department to reduce the H–S–R Act waiting period "and allow any person to proceed with any acquisition subject to" the H–S–R Act. 15 U.S.C. § 18a(b)(2). The Commission's premerger notification rules expressly provide that "early termination" of the waiting period may be granted either upon written request by a party to the acquisition or *sua sponte* by the Commission or the Department. 16 C.F.R. § 803.11(c).

9. A Formal Interpretation of those rules and regulations, issued by the Bureau of Competition on April 10, 1979, identifies the principles governing the Bureau's consideration of "early termination" requests. This Interpretation states that such requests will not be granted unless the Commission has concluded that it will not take any further action within the waiting period and unless the requesting party demonstrates "some special business reason that warrants early termination of the waiting period," such as a "need to complete the transaction before the waiting period would normally expire."

10. The Commission has granted early termination in 290 acquisitions since September 1978. Such acquisitions have included American Express Corporation's acquisition of Shearson Loeb and Caterpillar Tractor Company's acquisition of a portion of International Harvester. Eleven early termination requests were granted in January, 1982 alone.

11. Early termination has been granted in five contested, or hostile, acquisitions. These have included Wheelabrator-Frye Corporation's acquisition of Pullman, Inc. when J. Ray McDermott Inc. was also bidding for Pullman; Olympia & York Incorporated's acquisition of the Abitibi Price Co. of Canada, when another Canadian company was also bidding for Abitibi; and E. I. duPont de Nemours & Company's acquisition of Conoco when Mobil Corp. was also bidding for Conoco.

C. *Cinema's Request for Permission to Acquire Up to 49.9% of Heublein's Stock*

12. General Cinema Corporation ("Cinema") is a Delaware corporation having its principal place of business in Chestnut Hill, Massachusetts, and is primarily engaged in bottling and marketing carbonated soft drinks and in the exhibition of motion pictures.

13. On February 4, 1982, Cinema filed with the Commission and the Department a premerger notification form and exhibits, in which Cinema sought approval from the Commission and the Department to acquire, through open market and private transactions, up to 49.9% of Heublein's common stock. Upon the filing of Cinema's premerger notification form, it was determined that the Commission, rather than the Department, would assume responsibility for evaluating the competitive effects of Cinema's proposed acquisition of up to 49.9% of Heublein's stock.

14. On February 19, 1982, Heublein filed the premerger notification form and exhibits required to be submitted by parties whose stock may be acquired in a transaction subject to the H–S–R Act. 15 U.S.C. § 18a(a), (b); 16 C.F.R. § 801.30(b)(2).

15. Upon receipt of Cinema's and Heublein's premerger notification filings, the Commission reviewed Cinema's proposed acquisition of up to 49.9% of Heublein's stock and determined to allow Cinema to consummate the acquisition. Under the Commission's premerger notification rules, Cinema's waiting period expired at 11:59 p. m. on March 6, 1982, and, effective at that time, the Commission permitted Cinema to acquire up to 49.9% of Heublein stock.

D. *Heublein's Request for Permission to Acquire Up to 49.9% of Cinema's Stock*

16. On March 2, 1982, Heublein filed a premerger notification form and exhibits in which Heublein sought approval to acquire, through open market or private transactions, up to 49.9% of Cinema's common stock. Under the Commission's premerger notification rules, the H–S–R Act waiting period with respect to Heublein's acquisition of up to 49.9% of Cinema's stock will not expire until 11:59 p. m. on April 2, 1981 unless reduced by the Commission pursuant to its authority to grant an "early termination" of the waiting period.

17. By letter dated March 2, 1981, submitted pursuant to section 7A(b)(2) of the Clayton Act, as amended by the H–S–R Act, Heublein requested that the Commission terminate the H–S–R Act waiting period with respect to Heublein's acquisition of up to 49.9% of Cinema's stock as soon as possible, but no later than the expiration of the waiting period with respect to Cinema's acquisition of up to 49.9% of Heublein's stock. As grounds for early termination of its H–S–R Act waiting period, Heublein's letter of March 2, 1982 stated:

(a) That there is no likelihood that Heublein's acquisition of Cinema stock will lessen competition in any line of commerce in any section of the country;

(b) That unless Heublein's waiting period was terminated simultaneously with Cinema's, Cinema would be permitted to acquire up to 49.9% of Heublein's stock, while Heublein would not be permitted to acquire up to 49.9% of Cinema stock, and that such a result would be contrary to the legislative history and policies of the H–S–R Act.

E. *The Commission's Denial of Heublein's Request for Permission to Acquire Cinema's Stock Simultaneously With Cinema's Acquisition of Heublein's Stock*

18. On Thursday, March 4, 1982, the Bureau of Competition denied Heublein's request for early termination not because of any concern about the competitive effects of Heublein's acquisition of up to 49.9% of Cinema's stock, but because, in its view, Heublein had not demonstrated the existence of a "special business reason" in accordance with the Bureau's Formal Interpretation, dated April 10, 1979. The Bureau's position was that a "special business reason" was not shown by the fact that early termination was necessary so that Heublein would be free to acquire up to 49.9% of Cinema's stock at the same time that Cinema would be free to acquire up to 49.9% of Heublein's stock. The Bureau believed it should to remain "neutral" with respect to contested acquisitions and believed that to grant early termination to Heublein in this case would be to favor Heublein and disfavor Cinema.

19. By letter dated March 5, 1982, Heublein requested that the Commission review and reverse the Bureau's denial of Heublein's early termination request. On Monday, March 8, and Tuesday, March 9, 1982, the Commission reviewed the Bureau's denial and decided not to reverse it.

F. *Cinema's Efforts to Deter Heublein's Acquisition of Up to 49.9% of Cinema's Stock*

20. On March 9, 1982, Cinema was reported to have announced that it intended to acquire up to three million shares of its

own common stock. *Wall Street Journal*, March 9, 1982 at 52. It was reported that Cinema's acquisition of three million of its shares would increase the holdings of Cinema's chairman, vice chairman and their families to 47.5% of Cinema's then-outstanding shares. On March 12, 1982, Cinema was reported to have purchased on the open market 1,060,800 of its shares and increased its borrowing capacity from $160 million to $300 million. On that date, a share of Cinema's stock was reportedly priced on the open market at $42, the highest price of such stock in the previous fifty-two weeks. *Wall Street Journal*, dated March 12, 1982 at 46.

## CONCLUSIONS OF LAW

### I. *Jurisdiction*

1. Jurisdiction is vested in this Court by the provisions of 28 U.S.C. §§ 1331 and 1361.

### II. *Venue*

2. Venue lies in this Court under 28 U.S.C. § 1391(e)(4), as the defendants are officials or employees of an agency of the United States and the plaintiff resides in this District.

### III. *Standard for Granting A Temporary Restraining Order*

3. The standard enunciated by the United States Court of Appeals for the Second Circuit provides that a temporary or preliminary injunction will issue if the movant shows:

(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980); *Lynch v. Maher*, 507 F.Supp. 1268, 1271–72 (D.Conn. 1981); *Angell v. Zinsser*, 473 F.Supp. 488, 493 (D.Conn.1979).

### IV. *Irreparable Harm to Heublein*

4. As a Connecticut corporation, Heublein has the right to acquire and sell property and to invest corporate funds. Conn.Stat. § 33–428. Moreover, a corporation has the right to make lawful investments on behalf of its shareholders in such manner and at such time as the corporation deems it advantageous to do so. *Missouri Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851, 868 n. 35 (2d Cir.), *cert. denied*, 419 U.S. 883, 95 S.Ct. 150, 42 L.Ed.2d 123 (1974); *Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.*, 476 F.2d 687, 798 (2d Cir. 1973).

5. If Heublein's right to invest is to be preserved, Heublein must be permitted to invest now. Already, as a result of the Commission's actions described above, nine days have elapsed since Cinema became free to acquire up to 49.9% of Heublein's stock, and during this time Heublein has been prohibited from acquiring a like amount of Cinema's stock. The favorable market opportunities which, absent the Commission's action, would have been available to Heublein during that period, have been irretrievably lost. Moreover, Heublein cannot be compensated for such lost opportunities by money damages. Hence, Heublein has already been irreparably harmed as a result of the Commission's action and it has no adequate remedy at law.

6. In addition, as each day passes during which Heublein is prohibited from acquiring up to 49.9% of Cinema's stock, Heublein loses the favorable market opportunities which would be available to Heublein were it able immediately to acquire up to 49.9% of Cinema's stock. In addition, Cinema's purchases of its own stock, and other actions which Cinema, as a target company, may take to defeat Heublein's effort to purchase Cinema's stock,[1] are further evidence of the likelihood that Heublein will be irreparably harmed unless it is immediately permitted to consummate its proposed acquisition of Cinema's stock.

---

1. Congress and the courts have recognized that target companies commonly take a variety of actions in attempting to defeat the acquisition of their stock in hostile transactions. H.R.Rep. No.94–1373, 94th Cong., 2d Sess. at 12 (1976);

■ 7. Heublein has also been irreparably harmed because the Commission's action has deprived Heublein of its right to due process under the Fifth Amendment and its rights under the Administrative Procedure Act ("APA"). Hence, irreparable harm to the public and to Heublein is presumed in this case because equitable requirements are satisfied *per se* when a violation of federal law is shown since, in enacting the statute, Congress declared that violations of the statute are contrary to the public interest and, therefore, cause irreparable harm. *Community Nutrition Institute v. Butz*, 420 F.Supp. 751, 754, 757 (D.D.C.1976); ["When Federal statutes have been violated, it has long been the rule that a court need not inquire into the traditional requirements for equitable relief."] *Lathan v. Volpe*, 455 F.2d 1111, 1116 (9th Cir. 1971); *Sierra Club v. Coleman*, 405 F.Supp. 53, 54–55 (D.D.C. 1975).

### V. The Balance of Hardships Tips Decidedly in Heublein's Favor

8. The balance of hardships in this case decidedly favors issuance of a temporary restraining order to Heublein.

9. Neither defendants nor the public interest will be harmed if Heublein is permitted to acquire up to 49.9% of Cinema's stock, because defendants have determined to allow consummation of that acquisition.

10. Since neither the defendants nor the public interest will be harmed by issuance of the requested temporary restraining order and Heublein will be irreparably harmed absent such relief, the balance of hardships tips decidedly in favor of Heublein.

### VI. Heublein Is Likely To Succeed On The Merits Of This Action

A. *Heublein Is Likely To Succeed in Showing That The Commission Exceeded Its Statutory Jurisdiction And Authority In Denying Heublein's Request For Early Termination of The H–S–R Waiting Period*

11. Sections 702 and 704 of the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. provide for judicial review of the Commission's denial of Heublein's early termination request. (5 U.S.C. §§ 702, 704.)

12. Under § 706(2)(C) of the APA, agency action must be set aside if it exceeds the agency's statutory jurisdiction or authority. That section provides:

> The reviewing court shall—(2) hold unlawful and set aside agency action, . . .
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . .

*See National Labor Relations Board v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965); *H & H Tire Co. v. United States Department of Transportation*, 471 F.2d 350, 355 (9th Cir. 1972).

■ 13. The Commission's denial of Heublein's early termination request exceeded the Commission's jurisdiction and authority for each of several reasons. First, the H–S–R Act is intended to permit the antitrust enforcement agencies to evaluate the competitive effects of a transaction and the purpose of the H–S–R waiting period is to provide those agencies sufficient time, in advance of an acquisition, to conduct that analysis. But Heublein was denied early termination on a ground unrelated to competitive considerations. Hence, the Commission's denial of Heublein's request was contrary to the H–S–R Act's purpose and, therefore, beyond its jurisdiction and authority and serves no governmental purpose under the Act.

14. Second, Heublein was denied early termination because the Commission believed that Heublein's request was governed by the standards set forth in the Bureau of Competition's Formal Interpretation, dated April 10, 1979. That Formal Interpretation states that an early termination will not be granted unless the requesting party demonstrates a "special business reason" justifying early termination. However, neither the H–S–R Act nor its legislative history justifies a requirement that a

*MITE Corp. v. Dixon*, 633 F.2d 486, 498 (7th Cir. 1980).

"special business reason" be shown in order to obtain an early termination. If, as here, the Commission has determined well prior to the expiration of the waiting period that the particular transaction will not likely lessen competition and if, as here, Heublein has presented a lawful business reason for early termination, it is beyond the Commission's authority not to grant early termination on the ground that a "special business reason" has not been shown.

15. Third, Heublein's request was denied not because of any concern about the competitive effects of Heublein's acquisition of Cinema's stock, but because the Commission believed that it must remain "neutral" with respect to contested acquisitions and that to grant early termination to Heublein would be to favor Heublein and disfavor Cinema. This rationale is wrong because if the Commission intends to remain "neutral" with respect to the Heublein-Cinema acquisitions, it should grant Heublein early termination to permit Heublein to acquire Cinema's stock at the same time as Cinema is acquiring Heublein's stock.

16. Finally, the Commission has applied its policy of prohibiting early terminations in contested acquisitions in a discriminatory fashion.

17. For these reasons, Heublein is likely to succeed in establishing that the Commission's denial of Heublein's early termination request exceeded its jurisdiction and authority and must, therefore, be set aside.

B. *Heublein Is Likely to Succeed in Showing That The Commission Was Arbitrary, Capricious And Abused Its Discretion in Denying Heublein's Request for Early Termination of the H–S–R Waiting Period*

18. Section 706(2)(A) of the APA provides that on review of agency action: The reviewing court shall—(2) hold unlawful and set aside agency action, findings and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

In reviewing agency action under this standard, the court must determine whether the agency's decision was based on a consideration of relevant factors and whether it is consistent with the overall policy of the governing Act. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

19. For several reasons, Heublein is likely to succeed in establishing that the Commission's denial of Heublein's early termination request was arbitrary, capricious and an abuse of discretion. First, the H–S–R Act is intended to permit the antitrust enforcement agencies to evaluate the competitive effects of a transaction and to provide those agencies sufficient time to conduct that analysis. Heublein, however, was denied early termination on a ground unrelated to competitive considerations. Second, there appears to be no rational basis for the Bureau's requirement that a "special business reason" be shown in order to justify an early termination. Third, the Commission has granted a large number of early termination requests including many involving acquisitions among large companies. Fourth, there appears to be no rational basis for the Bureau's position that it must remain "neutral" with respect to contested acquisitions and that to grant early termination to Heublein would be to favor Heublein and disfavor Cinema. If the Commission intends to remain "neutral" with respect to the Heublein-Cinema acquisitions, it should grant Heublein early termination to permit Heublein to acquire Cinema's stock at the same time as Cinema is acquiring Heublein's stock. Finally, the Commission has applied its policy prohibiting early terminations in contested acquisitions in a discriminatory fashion. "In this instance, to maintain a neutral posture, it is incumbent upon the Commission to grant an early termination, because to deny the same places it is an active posture against the petitioner corporation, Heublein."

20. For all of these reasons, Heublein will likely succeed in showing that Heublein's early termination request was arbitrary, capricious and an abuse of discretion.