**Robert and Elizabeth BUTLER**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT.**

Civ. A. No. 84–0121.

United States District Court, E.D. Pennsylvania.

Oct. 18, 1984.

Michael Donahue, Chester, Pa., for plaintiffs Delaware County Legal Assistance Association, Inc.

David B. Comroe, Philadelphia, Pa., for Federal National Mortg. Ass'n.

Edward S.G. Dennis, U.S. Atty., and Stanley Weinberg, Asst. U.S. Atty., Philadelphia, Pa., for HUD.

## MEMORANDUM

KATZ, District Judge.

*Facts*

Plaintiffs, Robert and Elizabeth Butler, filed this suit seeking judicial review of a

determination by the United States Department of Housing and Urban Development (HUD) that they do not qualify under 12 U.S.C. § 1715u (1982) for participation in HUD's Mortgage Assignment Program. Mr. and Mrs. Butler petition this court to set aside HUD's decision and either order the agency to accept assignment of their mortgage or in the alternative, remand the matter for a new administrative hearing. In addition, plaintiffs request this court to enjoin the Federal National Mortgage Association from instituting foreclosure proceedings against their property and to order HUD to direct the Federal National Mortgage Association to suspend prosecution of foreclosure proceedings against the Butlers. This action is before this court on cross motions for summary judgment.

The facts before this Court are undisputed. Plaintiffs purchased their current home in the late 1960's. Plaintiffs' mortgage is insured by HUD pursuant to the Section 221(d)(2) program, a federal program designed to stimulate and encourage homeownership among persons of low- and moderate-income. Defendant Federal National Mortgage Association currently holds this first mortgage. In 1970, Mr. Butler was severely injured and became partially disabled. Beginning in 1976, the Butlers took out several loans from the Beneficial Consumer Discount Company. After several years of under-employment and unemployment, Mr. Butler obtained steady employment in 1978. In the spring of 1981, plaintiffs defaulted on their first mortgage. The plaintiffs' joint tax returns show that their gross income fell from $13,463 in 1977 to $10,273 in 1978 to $8,869 in 1980.

In February 1982, plaintiffs applied to have their mortgage assigned to HUD pursuant to Mortgage Assignment Program. On December 3, 1982 following an informal conference, HUD sent the Butlers a Final Decision of Assignment letter in which it refused to accept assignment of the mortgage. In the letter HUD explained its decision on the grounds that it had found "[t]he default was not caused by a circumstance or set of circumstances beyond your control which temporarily rendered you financially unable to cure the delinquency within a reasonable time...." The HUD determination letter further stated that "[t]he default began in April 1981. There was no loss of income either before, during or after this time." HUD reaffirmed its determination in a letter dated April 14, 1983. On June 7, 1984 counsel for all parties entered into a written stipulation which provided, in part, that HUD would review its final decision to deny plaintiffs' request for assignment and that plaintiffs would agree to make their regular monthly mortgage payments commencing with the one due in May 1984. On June 8, 1984, HUD once again rejected plaintiff's request for assignment although it did find that there was a "reasonable prospect" that the plaintiffs would be able to resume full mortgage payments. On June 11, 1984 this court issued an injunction restraining the Federal National Mortgage Association from proceeding with the foreclosure sale until October 19, 1984. Whether plaintiffs have made mortgage payments pursuant to the June 7, 1984 Stipulation is a matter in dispute.

*Statutory and Regulatory Framework*

Pursuant to the statutory national housing goal of "a decent home and a suitable living environment for every American family", the United States Government operates several housing assistance insurance programs in which it insures mortgages on properties owned by low- and moderate-income individuals, elderly persons, handicapped persons and persons displaced by government action. *See* 42 U.S.C. § 1441 (1982). This insurance makes it possible for people who might not otherwise be able to obtain financing to purchase housing. Congress anticipated that persons requiring government assistance to acquire housing might also have difficulty keeping current in mortgage payments. Thus Congress authorized HUD to operate a mortgage relief program which requires HUD after receiving notice of default and for the purpose of avoiding foreclosure, to pay off the mortgage debt, take an assignment of

the mortgage from the mortgagee and work out a payment plan for eligible mortgagors.

HUD's administration of the Mortgage Assignment Program has been subject to some criticism. *Ferrell v. Pierce*, 560 F.Supp. 1344, 1372 (E.D.Ill.1983), *aff'd* 743 F.2d 454 (7th Cir.1984).

The statutory authority for the Mortgage Assignment Program is Title 12, Section 1715u(b)(1) of the United States Code which provides:

When the Secretary receives notice of a default described in subsection (a)(1) of this section and makes a determination that assistance under the subsection (a) of this section would be inappropriate in the case of the mortgagor, the Secretary (for the purpose of avoiding foreclosure of the mortgage ...) shall, if determined necessary by the Secretary, acquire the mortgage and security therefore upon payment of the insurance benefits in an amount equal to the unpaid principal balance of the mortgage plus any unpaid mortgage interest and reimbursement for such costs and attorney's fees as the Secretary finds were properly incurred in connection with the defaulted mortgage and its assignment to the Secretary, and for any proper advances theretofore made by the mortgagee under the provisions of the mortgage. After the acquisition of such mortgage by the Secretary, the mortgagee shall have no further rights, liabilities, or obligations with respect thereto ...

According to federal regulations, the Secretary will accept assignments of mortgages in order to avoid foreclosure when the defaulting mortgagor meets six conditions. 24 C.F.R. § 203.650(a) (1984). Since HUD has changed its position with regard to whether there is a reasonable prospect that the plaintiffs would be able to resume full mortgage payments after a period of reduced or suspended payments, only one of the six criteria is at issue here. Before HUD may accept assignment of a mortgage it must find that "[t]he mortgagor's default has been caused by circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency within a reasonable time or make full mortgage payments." 24 C.F.R. § 203.650(a)(5). HUD's handbook for administration of mortgage assignment programs provides examples of reasons for default that would be considered beyond a mortgagor's control including "[c]urtailment of family income, such as unemployment or underemployment; ... or other loss of income due to divorce, illness or death." *See* HUD Handbook No. 4330.2, "Administration of The Home Mortgage Assignment Programs," # 2–3 (January 1979).

*Scope of Review*

■ This court's review of HUD's determination of the plaintiffs' eligibility for participation in the Mortgage Assignment Program is governed by the Administrative Procedure Act which provides in part that a "reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ..." 5 U.S.C. § 706(2)(A) (1982). The Supreme Court characterized the appropriate standard of review under 5 U.S.C. § 706(2)(A) in *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (citations omitted):

Section 706(2)(A) requires a finding that the actual choice made [by the agency] was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law ... To make this finding the court must consider whether the decison was based on a consideration of the relevant factors and whether there has been a clear error of judgment ... Although this inquiry into the facts is to be searching and careful, the ultimate standard is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Therefore in reviewing the administrative record this Court will examine whether HUD considered all factors relevant to

whether circumstances beyond the plaintiff's control caused their mortgage default as well as whether HUD's deliberations indicate any clear errors of judgment.

*Discussion*

Plaintiffs allege that three circumstances beyond their control caused the 1981 default. First they argue that Mr. Butler's injuries in 1970 both limited and caused a decline in his earnings. Second, they argue that the refinancing of the first mortgage in 1977 and the repeated loans from Beneficial during the period 1976 through 1978 further sapped their ability to make mortgage payments. Finally, plaintiffs argue that tax increases levied in December 1981 were an expense beyond their control leading to default.

■ HUD denies that any of the three factors put forward by plaintiffs constitute "circumstances beyond the mortgagor's control" as contemplated by 24 C.F.R. § 203.650(a)(5). With regard plaintiffs' argument that the increased debt service burdens resulting from mortgage refinancing and consumer loans constitute a circumstance beyond their control, HUD found in its December 3, 1982 determination letter that analysis of the loans indicates financial mismanagement on the part of the Butlers. Although this characterization of the loans might reflect a lack of sensitivity to the problems of low- and moderate-income families trying to make ends meet in difficult economic times, this court cannot say HUD abused its discretion. HUD had before it documentation of the loans and this court will not substitute its judgment for the agency's.

■ HUD justifiably rejects the tax increase levied in December 1981 as a circumstance leading to plaintiffs' default. Normally an increase in taxes would be a factor beyond a mortgagor's control. However, in this case although there is some confusion in the record as to the date of plaintiffs' default on their mortgage, the latest date advanced by either party is October 1, 1981, a date two months *before* the increase in taxes. Therefore HUD quite appropriately argues that the increase in

taxes did not cause the plaintiffs' default regardless of whether it was a circumstance beyond the plaintiffs' control.

HUD likewise rejects the plaintiffs' argument that Mr. Butler's injuries in 1970 qualify as a circumstance beyond the plaintiffs' control which caused their default. Importantly, the administrative record indicates that HUD refused to consider Mr. Butler's injuries as causing the default since they occurred a number of years prior to the default. The affidavit of Mr. Harry F. Dougherty, a Supervisory Loan Specialist at HUD, contains the statement, "After extensive deliberation it was concluded that it was not reasonable to go back to an injury that occurred twelve years ago in determining the reason for default." This court finds that HUD failed to consider whether Mr. Butler's injuries could have constituted the cause of his default. This finding is confirmed by the November 24, 1982 notes of a HUD official relating to the first conference on the Butler request for assignment:

> Mr. Sedemeyer contacted Art Orton, C.O., concerning the period to be considered in determining the reason for default ... Mr. Sedemeyer asked Mr. Orton whether it was reasonable to go back 12 years to determine the reason for the default ... Mr. Orton returned Mr. Sedemeyer's call. Mr. Orton stated it is not reasonable to go back 12 years in determining the reason for default. They agree with this office that what happened 12 years ago was irrelevant.

■ I find that HUD's failure to consider injuries to one of the plaintiffs as a possible cause of their default merely because the injuries occurred a number of years prior to the default was arbitrary, capricious, and an abuse of discretion. Neither the statute nor HUD's own regulations circumscribe the time period during which qualifying circumstances causing default may occur. The adoption by HUD of a *per se* rule that it will not consider events that took place a certain number of years prior to default is both arbitrary and unrea-

sonable. The circumstances leading to the inability of a mortgagor to remain current may well have been set in motion several months or years prior to the actual default. For example, an unexpected illness and the resulting loss of income and/or increase in medical expenses may deplete a person's savings making him or her vulnerable to default at some latter time. To refuse to consider the illness as a potential circumstance beyond the control of the mortgagor would be contrary to the objectives of the Mortgage Assignment Program as well as arbitrary, capricious, and an abuse of discretion. *See James v. U.S. Dept. of HUD,* No. 4–81–457 (D.Minn.1982) (illness occurring several months prior to default should be considered as circumstance beyond mortgagor's control).

HUD's decision not to consider Mr. Butler's injuries as a potential cause of the plaintiffs' default explains the absence of information in the administrative record relating to the effect of his injuries on his income, both in the past and present. Upon reconsideration of the plaintiffs' request for assignment, HUD should consider whether Mr. Butler's injuries and the physical limitations they impose upon him caused the default.

HUD's refusal to consider events occurring more than a short time period prior to default is also evident in the finding contained in its December 3, 1982 determination letter that "[t]he default began in April 1981. There was no loss in income either before, during or after this time." HUD, by narrowing its focus to the time period shortly preceding the default, is thus able to ignore a significant decline in the Butlers' gross income from $13,462 in 1977 to $8,869 in 1980. I find HUD's determination that the Butlers' incurred no loss of income before April 1981 to be clearly erroneous.

For these reasons, I hereby grant summary judgment in favor of the plaintiffs.

*Relief*

■ Based upon this court's finding that HUD's consideration of the Butlers' request for a mortgage assignment was arbi-

trary, capricious, and an abuse of discretion, it is hereby ordered that HUD conduct a *de novo* review of the Butlers' assignment application. The Butlers shall furnish all appropriate information for this review. HUD should consider whether any "circumstances beyond the mortgagor's control" caused plaintiffs' default including the injuries of Mr. Butler, their duration and effect.

■ I will further order that HUD and the Federal National Mortgage Association are enjoined from proceeding with any mortgage foreclosure proceedings against plaintiffs until such time as this court modifies or revokes the injunction upon consideration of HUD's final administrative determination. In order to grant a preliminary injunction a court must find that the moving party will suffer irreparable injury if relief is not granted to maintain the status quo until a final resolution on the merits can be made and that there is a reasonable probability of eventual success on the merits. In addition, the court must weigh the possibility of harm to the nonmoving party as well as to any other interested persons and when relevant, harm to the public. *See Continental Group, Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 356–57 (3d Cir.1980); *Delaware River Port Authority v. Transamerican Trailor Transport, Inc.,* 501 F.2d 917, 919–20 (3d Cir.1974).

Plaintiffs will clearly suffer irreparable injury if this court does not act to enjoin HUD and the Federal National Mortgage Association from foreclosing their mortgage since the relief they are seeking is the assignment of the mortgage to HUD. Therefore failure to issue an injunction may lead to loss of the Butlers' home. This Court finds it necessary to issue an injunction in order to maintain the status quo pending final resolution of the Butlers' request. Although this Court hesitates to predict how an administrative agency will rule on a matter before it, I find that plaintiffs have shown a reasonable probability of success on the merits.

In weighing the possibility of harm to HUD and the Federal National Mortgage Association if an injunction is granted against the harm to plaintiffs if one is not, I find that the potential harm to the defendants is less than the irreparable harm to the plaintiffs. First, plaintiffs have every reason to maintain the property in question pending final determination of their request for assignment since they will remain the owners if assignment is granted. Secondly, plaintiffs must make regular mortgage payments for the time period of the injunction. If the plaintiffs fail to remain current in their mortgage payments, the defendants may petition this Court for reconsideration of the injunction.

Finally, I find that the issuance of an injunction preventing foreclosure of plaintiffs' mortgage will serve rather than detract from the public interest. By enacting the Mortgage Assignment Program, Congress clearly indicated that it is in the public interest to assist low- and moderate-income households in avoiding foreclosure of their mortgages and loss of their homes. *See* S.Rep. No. 924, 86th Cong., 1st Sess. (1959). Permitting the Butlers' to lose their home prior to being afforded a full and fair hearing on their request for mortgage assignment would violate the national housing purposes for which the mortgage Assignment Program was enacted.

### ORDER

AND NOW, this 18th day of October, 1984, upon consideration of Plaintiffs' and Defendants' Motions For Summary Judgment, it is hereby ORDERED that Plaintiffs' Motion is GRANTED and Defendants' Motions are DENIED. Defendant, HUD, is further ORDERED to reconsider the plaintiffs' application for mortgage assignment in accordance with the accompanying Memorandum. Furthermore, HUD and the Federal National Mortgage Association are hereby enjoined from proceeding with any action to foreclose upon plaintiffs' mortgage so long as plaintiffs continue to maintain their regular mortgage payments and until such time as this Court modifies this Order.

Bond shall be posted by the plaintiffs in the amount of $644.