### William S. RICKARDS, Jr. and Colette S. Rickards

v.

### The UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; Samuel R. Pierce, Jr., Secretary of the United States Department of Housing and Urban Development; Joseph Russell, Chief, Loan Management Branch, Philadelphia Area Office; and Southeast Mortgage Company.

### Civ. A. No. 85–2226.

United States District Court,
E.D. Pennsylvania.

Dec. 5, 1985.

Mark A. Kaufman, Chester, Pa., for plaintiffs.

Edward T. Ellis, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, Chief Judge.

Plaintiffs, William and Colette Rickards, seek judicial review of the decision of the United States Department of Housing and Urban Development ("HUD") rejecting their application for an assignment of their mortgage. The parties have filed cross-motions for summary judgment. For the reasons which follow, I will remand the matter to HUD for reconsideration.

In April 1983, plaintiffs purchased a home with a loan secured by a mortgage which was assigned to mortgagee Southeast Mortgage Company in May 1983. The mortgage was insured by HUD pursuant to § 221(d)(2) of the National Housing Act. *See* 12 U.S.C. § 1709. After falling three months behind on their payments, plaintiffs were notified by Southeast Mortgage Company on June 12, 1984, that it intended to foreclose on the mortgage.

Pursuant to § 1715u of Title 12 of the United States Code, the Secretary of HUD is authorized to accept an assignment of the loan and security on any HUD-insured mortgage for the purpose of avoiding foreclosure. *See* 12 U.S.C. § 1715u, 24 C.F.R. §§ 203.650–60. The request for assignment may come from the mortgagee or mortgagor. 24 C.F.R. § 203.652. In this instance, Southeast Mortgage Company did not request the assignment because it determined that the plaintiffs were not eligible.[1]

HUD may only accept assignment of a mortgage when six conditions are satisfied. 24 C.F.R. § 203.650(a). The operative requirement for the purposes of this action is that the default must have been "caused by circumstances beyond the mortgagor's control which render the mortgagor unable to

---

1. In a letter to HUD dated July 30, 1984, Southeast stated that it did not feel that the Rickards qualified for an assignment because it saw "no prospect for mortgagor to pay this loan in full by maturity date." (Administrative Record at 69). The letter also stated that "[w]e feel that this default was caused by circumstances beyond his control." However, in the HUD form which Southeast filled out and returned to HUD, dated July 27, 1984, Southeast noted that the default was *not* caused by circumstances beyond the mortgagor's control. (A.R. at 70) (emphasis added). It is clear that the first notation was in error since the matter of assignment was ultimately referred to HUD for decision.

correct the delinquency within a reasonable time or make full mortgage payments." 24 C.F.R. § 203.650(a)(5). Plaintiffs applied to HUD for an assignment of their mortgage. HUD rejected the application. The Rickards then commenced the instant action for review of HUD's decision, contending that HUD's determination was arbitrary, capricious, and an abuse of discretion.

In reviewing HUD's decision, my role is limited to determining whether the agency's action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *Anderson v. United States Dept. of Housing and Urban Development,* 701 F.2d 112 (10th Cir.1983). The reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment ... but may not substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).

In its initial rejection of plaintiffs' request for an assignment, HUD stated that it could not accept the assignment because it had determined that the default was not caused by circumstances beyond the plaintiffs' control, and further, that there was no reasonable prospect that the plaintiffs would be able to resume full mortgage payments after a temporary period of reduced or suspended payments. Pursuant to plaintiffs' request, an appeal conference was held at the HUD office on November 20, 1984. In its letter of January 17, 1985, notifying plaintiffs of its final decision to reject their application, HUD stated that the loss of income resulting from Mr. Rickards' job dismissal was the cause of the default, and that plaintiffs had failed to

demonstrate that this was a circumstance beyond their control.

The facts in the administrative record are as follows: William Rickards was dismissed from his job on February 20, 1984. His employer stated that he was fired for leaving work without permission and failing to punch his time card as required. Rickards applied for unemployment benefits which were denied by the referee of the Pennsylvania Unemployment Compensation Board of Review on the ground that Rickards had been dismissed for "willful misconduct." The Pennsylvania Unemployment referee found that Rickards had earlier been warned regarding violations of work rules and knew or should have known that his actions would result in termination. Section 402(c) of the Pennsylvania Unemployment Law provides that a claimant who is dismissed for "willful misconduct," i.e., actions of an intentional or deliberate nature which violate the employer's rules or standards of conduct, is ineligible for benefits. 43 P.S. § 802(e) (1964).

Plaintiffs assert that HUD impermissibly accepted the referee's decision as dispositive of whether termination of employment was a circumstance beyond Mr. Rickards' control.[2] But the administrative record also contains a statement by Mr. Rickards' employer that Rickards was dismissed for leaving work without permission and for not punching out his time card as required. The determination of the Unemployment Compensation Board of Review was, accordingly, not the sole basis for HUD's finding that Mr. Rickards' termination was not a circumstance beyond his control and, in any event, it was proper for the agency to consider the referee's decision, along with Rickards' failure to appeal, as evidence that the circumstances of termination were within his control.

**2.** Plaintiffs claim that the referee's decision should be accorded little weight by HUD because under Pennsylvania law a person who is dismissed from employment for violating a work rule is to be denied benefits regardless of extenuating circumstances. This is a misstatement of the law. *See Frumento v. Unemployment Compensation Board of Review,* 466 Pa.

81, 351 A.2d 631 (1976) (refusal by an employee to comply with an employer's rule or demand is not willful misconduct if its application to the employee's circumstances is unreasonable). *See also Philadelphia County Board of Assistance v. Commonwealth,* 64 Pa.Commw. 451, 440 A.2d 693 (1982).

There was also evidence in the administrative record that on March 11, 1983, William Rickards was involved in an altercation at about 1:00 a.m. while driving home from work on Route 252 near Newtown, Pennsylvania. According to Rickards, two youths ran his car into the curb and physically threatened him. While attempting to defend himself, Rickards allegedly stabbed one of the men in the stomach.[3] Rickards was arrested on June 23, 1983 on charges arising out of this incident. A jury convicted Rickards of assault in November 1983. Rickards incurred $4,576.30 in legal fees and costs in his defense. Thereafter, the trial judge granted Rickards a new trial. At the second trial, Mr. Rickards entered into a plea bargain and received a sentence of three years' probation for pleading guilty to the assault charge.

Plaintiffs contend that HUD failed to consider the altercation and subsequent arrest and conviction as a cause of his job termination. At the HUD conference held on November 20, 1984, Mr. Rickards expressed the belief that his dismissal came about because of his arrest and conviction for assault. On the initial HUD application, Rickards made no such assertion.[4] Plaintiffs produced no evidence to indicate that Mr. Rickards' arrest and conviction caused the job loss.[5] It could not have been due to time lost in connection with the proceedings, because the record indicates that Rickards missed only six days of work between the date of the incident and the date of his trial, and he did not miss any time in the months immediately preceding, during, or following his trial.

In their brief, plaintiffs assert that as a result of the stress of Mr. Rickards' trial, he suffered "a maladaptive reaction with impaired occupational functioning." Plaintiffs assert that this ailment was a cause of Mr. Rickards' job termination, and was a circumstance beyond his control. Although plaintiffs claim that they raised this issue at the appeal conference and that "it [was] not reflected in the notes taken by HUD," it appears that this issue was raised for the first time in their brief filed in this court. The contention therefore merits no consideration, and further, there is no support for it in the record.

Plaintiffs also assert that HUD failed to consider Mr. Rickards' arrest and conviction as a possible cause of the default on the mortgage. In their initial HUD application the plaintiffs stated that "[h]igh legal fee expenditure depleted all cash reserves." Plaintiffs produced a statement dated November 13, 1984, showing that $4,050.00 in legal fees had been paid to that date, with an unpaid balance of $326.30. The statement does not reflect when the payments were made. A bank statement dated November 12, 1984, showing a zero savings account balance, was also submitted by the plaintiffs, but no detail was offered to show expenditures from that savings account for legal expenses or otherwise.

HUD determined that Mr. Rickards' job termination was the cause of the default. Rickards was dismissed on February 20, 1984. The plaintiffs made mortgage payments on March 5, 1984, March 30, 1984, and on May 31, 1984. This last payment, made possible by a gift from Rickards' church, was applied to March 1984. Although the record indicates that the plaintiffs had frequently been late in making mortgage payments, they had never before been three months behind in their payments and the mortgage company for the

---

**3.** In his statement to the police, Rickards stated that he took out his pocket knife to defend himself as the men came closer and "the driver of the vehicle came closer to me after that until he felt the knife pressing against his stomach. At which time he backed up...." (A.R. at 17).

**4.** In fact, in their initial application to HUD for an assignment, plaintiffs stated that "[h]usband tried and acquitted in court in Nov. 1983."

**5.** It is the responsibility of the mortgagor to provide HUD with all of the information it needs to make a decision concerning an assignment request. 24 C.F.R. § 203.654. Plaintiffs were notified in their preliminary rejection letter that they had to submit additional information in order to obtain a favorable determination by HUD.

first time declared the mortgage in default after Mr. Rickards lost his job.

■ When an administrative decision is subject to judicial review, the agency must indicate the grounds for its decision so that the court may properly determine whether the agency has abused its discretion. *See Matlovich v. Secretary of the Air Force*, 591 F.2d 852, 857 (D.C.Cir.1978). The HUD examiner wrote "(the accident does not apply)" under the section for comments regarding the applicants' failure to meet the eligibility criteria. It is not at all clear from that notation whether the incident was considered by the HUD examiner and rejected as a potential cause of the default, or whether the incident was determined by the examiner to be entitled to no consideration at all.

The Supreme Court has stated that a reviewing court must assure itself that the agency's decision was "based on a consideration of the relevant factors." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. at 415, 91 S.Ct. at 823. A decision of "less than ideal clarity" will be upheld if the agency's rationale "may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas-Best Freight Systems, Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), *reh. denied*, 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975).

In *Butler v. HUD*, 595 F.Supp. 1041 (E.D.Pa.1984), the plaintiffs purchased a home which was financed by a HUD-insured mortgage. In 1970, Mr. Butler was severely injured, became partially disabled, and plaintiffs' joint income declined. In 1982, after being threatened with foreclosure, plaintiffs applied to have their mortgage assigned to HUD. HUD rejected the request, determining that the default had not been caused by reasons beyond the control of the plaintiffs and that it was not reasonable to consider any injury that had occurred twelve years before as a possible cause of the default.

In that case, the district court held that HUD's failure to consider whether Mr. Butler's injuries could have caused the default was arbitrary, capricious and an abuse of discretion. The court noted that the circumstances leading to the inability of the mortgagor to remain current may have been set in motion several months or years prior to the actual default. As an illustration, the court posited that an unexpected illness and the resulting expenses and/or loss of income could deplete a mortgagor's savings, making the mortgagor vulnerable to default. In the instant case, Rickards might have had sufficient savings to enable him to continue making mortgage payments despite losing his job had he not incurred substantial legal fees as a result of the incident, assuming that the legal fees might have been paid out of the Rickards' savings. *See Butler*, 595 F.Supp. at 1045–46. *Cf. James v. HUD*, Civil Action No. 4–81–457 (D.Minn., April 1, 1982) (court determined that HUD erroneously rejected plaintiff's illness, which caused her to deplete her savings, as a cause of her default).

■ The explanation for HUD's decision in this case is certainly of "less than ideal clarity." I am unable to discern what the HUD examiner meant by "(the accident does not apply)." *See Lukens Steel Co. v. Kreps*, 477 F.Supp. 444, 458 (E.D.Pa.1979) ("[i]t is not the Court's function to search the record for something which *might* support the agency's decision, if the agency itself has not clearly set forth its reasons.") (emphasis in original). I am unwilling, and I do not consider it within my province, to speculate as to whether the agency considered the possible effect of Rickards' legal expenses on the default. The matter will be remanded to the agency for clarification of its treatment of the legal expense issue.

Plaintiffs also contend that HUD failed to consider Mrs. Rickards' loss of seasonal employment and complications due to pregnancy as potential causes of the default. Mrs. Rickards worked from October 1983 to January 1984 at a seasonal job. She earned approximately $45.00 a week. Mrs. Rickards' loss of income was not mentioned in plaintiffs' initial application to HUD or at the appeal conference of November 20,

1984. Plaintiffs were able to make mortgage payments from June 1983 to October 1983 when Mrs. Rickards was not working. Plaintiffs assert that Mrs. Rickards' physical problems associated with her pregnancy were a cause of the default since they left her "unable to find other work," but plaintiffs failed to produce any documentation of her physical condition.

The HUD Handbook for administration of mortgage assignment programs provides examples of reasons for default which would be considered beyond a mortgagor's control. These include "[c]urtailment of family income, such as unemployment or underemployment ... or other loss of income due to divorce, illness or death." In its supplemental brief, HUD asserts that it considered all of the circumstances surrounding plaintiffs' default, stating that "[t]here is no evidence whatsoever that HUD did not consider every one of the factors which the mortgagors give as a reason for the default." This statement misconstrues HUD's burden of demonstrating that it has considered all of the relevant factors. I must satisfy myself that HUD *did* consider all of the relevant factors in denying the plaintiffs' request for an assignment, and this must be done by an examination of the record. The record is not entirely clear as to how HUD treated Mrs. Rickards' unemployment and alleged complications due to pregnancy, two conditions specifically noted in the HUD Handbook.[6] *See Weigant v. HUD*, Misc. Action No. 84–0839 (E.D.Pa., January 10, 1985) (court remanded assignment decision to HUD for clarification because agency failed to explain how it dealt with illness of the mortgagor's wife and resulting loss of income). Since the matter is being remanded, the agency should avail itself of the opportunity to resolve any remaining doubt that it considered and rejected the pregnancy problem as a cause of default.

Plaintiffs also contend that HUD failed to consider Mr. Rickards' alcohol and drug problems as possible causes of the default. Mr. Rickards entered a facility for treatment of his chemical dependency on August 24, 1984 and was released on November 18, 1984. The date of default on the mortgage was May 1, 1984, thirty days after April 1, 1984, which was the due date of the last unpaid installment of the mortgage. *See Ferrell v. Pierce*, Civil Action No. 73–C–334 (N.D.Ill., March 22, 1985) (describing proper calculation of date of default). Only circumstances occurring prior to the date of default may be considered in determining assignment eligibility. It appears that plaintiffs furnished no information as to when Mr. Rickards became addicted. All that appears in the record is that the problem began sometime after Mr. Rickards lost his job. Although plaintiffs produced no evidence to show how Mr. Rickards' drug and/or alcohol addiction caused the default in May of 1984, there is nothing in HUD's ruling reflecting that it considered and rejected this as a potential cause of the default. Again, since the matter is being remanded, it would be well for HUD to clarify whether it did consider and reject this claim.

When an agency decision fails to address all the relevant factors, even a "restrained exercise of judicial review is impossible." *See City Federal Savings & Loan Association v. Federal Home Loan Bank Bd.*, 600 F.2d 681, 689 (7th Cir.1979). When the failure of an agency to explain its action frustrates effective judicial review, the court may remand the matter to the agency for clarification of the record. 600 F.2d at 689; *Lukens Steel Co. v. Kreps*, 477 F.Supp. at 458. Because HUD's explanation for its rejection of the Rickards' application for an assignment of their mortgage is incomplete and unclear, this action will be remanded for HUD's reconsideration and explanation in accordance with the views expressed herein.

---

6. Counsel for HUD asserts that the notes of the November 20, 1984 conference "demonstrate that these other circumstances were considered." However, no mention of Mrs. Rickards' unemployment or pregnancy is contained in the notes summarizing the conference.