647 F.Supp. 1155 (1986)
SIKESTON PRODUCTION CREDIT ASSOCIATION, Delta Production Credit Association, and Southern Illinois Production Credit Association, Plaintiffs,
v.
FARM CREDIT ADMINISTRATION, and Farm Credit System Capital Corporation, Defendants.
Civ. A. No. S86-0147C.
United States District Court, E.D. Missouri, Southeastern Division.
October 14, 1986.
Judgment October 21, 1986.
David E. Blanton, Sikeston, Mo., James E. Reeves, Caruthersville, Mo., Charles M. Ferguson, Harrisburg, Ill., for plaintiffs.
*1156 Samuel C. Ebling, St. Louis, Mo., P. John Owen, Kansas City, Mo., Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., Lori E. Fields, Theodore C. Hirt, Richard G. Lepley, U.S. Dept. of Justice, Civ. Div., Mac Asbill, Jr., Warren N. Davis, Sutherland, Asbill & Brennan, Washington, D.C., Erwin O. Switzer, III, Bryan, Cave, McPheeters & McRoberts, David W. Sobelman, Jeffrey S. Gershman, St. Louis, Mo., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
WANGELIN, District Judge.
This case was tried to the Court. After consideration of the pleadings, the testimony and exhibits introduced at trial, the creditability of witnesses, the parties' briefs and supplemental briefs, the briefs filed by the Amicus Curiae, affidavits filed herein, arguments of counsel, and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.
Plaintiffs appear through their presidents and chief executive officers and through their attorneys, Blanton, Rice, Sidwell and Ottinger, Sikeston, Missouri and Ward & Reeves, Caruthersville, Missouri. Defendants appear through their attorneys, Morrison, Heckert, Curtis, Krueger & Parish, Kansas City, Missouri, Department of Justice, Civil Division, Washington, D.C. and Gallop, Johnson and Neuman, St. Louis, Missouri.
Any finding of fact equally applicable as a conclusion of law is adopted as such, and conversely any conclusion of law equally applicable as a finding of fact is so adopted.

Findings of Fact
1. This case arises out of proposed assessments to be made against plaintiffs by defendant, Farm Credit System Capital Corporation. This is a civil action for declaratory judgment under the provisions of 28 U.S.C. § 2201 to § 2202 to declare unlawful, null and void certain actions taken by defendant, Farm Credit Administration, under color of the Farm Credit Amendments Act of 1985, Pub.L. 92-205, 99 Stat. 1678, including the promulgation of what is styled by defendants as Capital Directive No. 1, and promulgation of regulations dealing with the operation of defendant, Farm Credit System Capital Corporation; and for preliminary and permanent injunction setting aside unconstitutional or unlawful actions of the defendants and restraining the defendants from implementing or applying the challenged portions of the regulations or "Capital Directive No. 1" under the 1985 Act.
2. This action arises under the provisions of the Fifth Amendment of the United States Constitution, the Farm Credit Amendments Act of 1985 (1985 Act) and the Administrative Procedure Act.
3. Plaintiff Sikeston Production Credit Association is a production credit association chartered under the Farm Credit Act of 1971, as amended, and existing and operating under 12 U.S.C. Sec. 2091 et seq. The principal office and place of business of Plaintiff Sikeston Production Credit Association is Sikeston, Scott County, Missouri 63801.
4. Plaintiff Delta Production Credit Association is a production credit association chartered under the Farm Credit Act of 1971, as amended, and existing and operating under 12 U.S.C. Sec. 2091 et seq. The principal office and place of business of Plaintiff Delta Production Credit Association is Dermott, Chicot County, Arkansas 71638.
5. Plaintiff Southern Illinois Production Credit Association is a production credit association chartered under the Farm Credit Act of 1971, as amended, and existing and operating under 12 U.S.C. Sec. 2091 et seq. The principal office and place of business of Plaintiff Southern Illinois Production Credit Association is Harrisburg, Saline County, Illinois 62946.
6. Defendant Farm Credit Administration ("FCA") is an independent agency in the executive branch of the Government of the United States of America created pursuant to 12 U.S.C. Sec. 2241.
*1157 7. Defendant Farm Credit System Capital Corporation ("Capital Corporation") is a federally chartered body corporate created pursuant to the 1985 Act.
8. Plaintiffs are members of the Farm Credit System described in 12 U.S.C. Sec. 2002. The Farm Credit System includes the following institutions:
(a) Twelve federal land banks, one of which is located in each of the twelve Farm Credit Districts of the United States;
(b) Federal Land Bank Associations, each of which serves and carries on its operations in a specifically described territory within the Farm Credit District served by its Federal Land Bank;
(c) Twelve Federal Intermediate Credit Banks, ("FICBs") one of which is located in each of the twelve Farm Credit Districts of the United States;
(d) Production Credit Associations ("PCAs"), each of which serves and carries on its operations in a specifically described territory within the Farm Credit District served by its Federal Intermediate Credit Bank;
(e) Thirteen Banks for Cooperatives, including one Central Bank for Cooperatives and twelve District Banks for Cooperatives, one of which is located in each of the twelve Farm Credit Districts of the United States.
9. Plaintiffs are solvent, financially sound PCAs located within the Sixth Farm Credit District, which comprises the States of Missouri, Arkansas and Illinois and are served by the Federal Intermediate Credit Bank of St. Louis ("FICB of St. Louis"). Only one other PCA exists within the Sixth District. That PCA is Central Production Credit Association, which resulted from the consolidation in 1985 of all of the PCAs in the district other than the plaintiffs, which were allowed to opt out of said consolidation.
10. Plaintiffs, though solvent, have faced or will face to varying degrees, restrictions on their ability to borrow or to lend as a result of their increased assessment from and the resultant heavy capitalization of FCSCC. Any reduction of the amount of their own funds available to loan to farmers will have a direct, immediate and adverse affect upon the plaintiffs. Primarily, the decrease in capital will result in lower interest income, which will force plaintiffs to increase interest rates to cover their fixed expenses. Higher interest rates will adversely affect the ability of plaintiffs to compete for good agricultural loans.
11. Southern Illinois Production Credit Association has unallocated retained earnings of $2,617,000 as of December 31, 1985. The source of these unallocated retained earnings are the interest rate spread paid for by the farmer borrowers within the Southern Illinois PCA district. None of the unallocated retained earnings come from any grant or is otherwise attributable to the Farm Credit System. On September 16, 1986, plaintiff, Southern Illinois PCA, received an assessment for $151,118 as part of the assessment and required purchase of Farm Credit System Capital Corporation obligations.
12. Delta Production Credit Association has unallocated retained earnings of $2,794,691. The source of Delta PCA's unallocated retained earnings are the farmer patrons, whose profits remain in the local PCA. Over the years the farmer borrowers have allowed the profits to accumulate within the PCA in order to obtain the advantage of lower and competitive interest rates rather than taking out the earnings as distributions. On September 16, 1986 Delta PCA received notice of assessment in the amount of $1,239,624. This amounts to 44% of Delta PCA's unallocated retained earnings.
13. Sikeston Production Credit Association has unallocated retained earnings of $7,803,000 as of December 31, 1985. On September 2, 1986 Sikeston PCA received a preliminary notice of proposed assessment. According to the memorandum Sikeston PCA will be assessed as a part of an effort to provide $1,000,000 for expenses of the Capital Corporation and will be required to contribute funds to the Capital Corporation as part of an effort to provide $300,000,000 *1158 to the Capital Corporation. Solvent, financially sound PCAs and system institutions will be assessed before other system institutions are required to contribute to the Capital Corporation, via zone classification.
14. The unallocated retained earnings of plaintiffs are the property of the farmer/patrons of the respective plaintiff PCAs, and the plaintiffs.
15. The proposed assessments upon plaintiffs are efforts to raise funds to be disbursed to six different Federal Land Banks. Federal Land Banks do not provide credit or any other service to plaintiffs or to other Production Credit Associations. Plaintiffs have not signed any agreements to be liable on any bonds or other Farm Credit system-wide obligations, and are not otherwise obligated or indebted to any other system institution.
16. Each year plaintiffs have paid Federal Income Tax on their current earnings, which represent the source of unallocated retained earnings that have been retained to benefit local farmer members.
17. Any reduction of the amount of plaintiffs' funds available will have a direct, immediate and adverse effect upon the plaintiffs. The decrease will result in lower interest income, which will force plaintiffs to increase interest rates to cover their fixed expenses. Higher interest rates will adversely affect the ability of plaintiffs to compete for good agricultural loans. Local farmers will be unable to obtain loans from local PCAs. The impact upon the plaintiff PCAs upon their ability to provide loans to farmers will continue to worsen as the assessments progress. The impact upon local farmers will be that many farmers, unable to get agricultural production loans, will not be able to continue farming; local farmers will go out of business. Reduction in plaintiffs' available accumulated earnings, will adversely affect their interest rate. For example, an assessment of 44% of Delta PCA's unallocated retained earnings will cause it an annual loss of $116,500. This in turn will cause Delta PCA to raise its interest rate 1.2% to off-set the loss of income. Such a rise in interest rates will mean that Delta PCA will not be able to finance production loans for many of their local farmer clients.
18. Plaintiff PCAs have paid off all obligations to the Federal Government. Plaintiffs are not obligated on bonds within the Farm Credit System. Plaintiffs are not obligated on Federal Land Bank obligations. Plaintiffs obtain their funds from the Federal Intermediate Credit Bank, which obtains its funds from system-wide obligations. The Farm Credit Administration has the authority to authorize any PCA to obtain money from other sources.
19. Problems in the agricultural economy have worsened over several years. Among these problems is a decline in lending volume of the Farm Credit System. Such a decline injures the system in two ways: (1) by reducing the operating income available to cover fixed costs, and (2) by preventing the system from reducing its average costs of funds by new borrowing at lower rates of interest. Only by maintaining low borrowing costs can the system compete effectively for the best credit risks.
20. In response to the farm crisis, Congress enacted the Farm Credits Amendments Act of 1985, 12 U.S.C. § 2216 and § 2152. The Act established a scheme whereby assets would be taken from various system institutions and used to benefit other financial institutions. As part of this scheme, defendant, FCA, was required to charter defendant, Capital Corporation. Defendant, FCA, was empowered to require plaintiffs, through assessment, to contribute capital to the Capital Corporation, and also to require some system institutions, including plaintiffs, to purchase stock or other obligations in defendant, Capital Corporation. In return for its payment of assessed unallocated retained earnings, defendants will issue bonds; no interest or other money will be paid on these bonds. The Capital Corporation is required to repay the assessments to plaintiffs if and when surpluses are available. At the time of repayment, if ever, interest will be *1159 paid upon the assessed money, at rates to be determined by the Capital Corporation.
21. By memorandum dated February 14, 1986, styled "Capital Directive No. 1", defendant, FCA, purported to restrict all farm credit institutions, including plaintiffs, from taking a number of otherwise lawful actions. The purpose of "Capital Directive No. 1" was to insure that the assets of Farm Credit System institutions, including plaintiffs, would be available for taking by defendant, Capital Corporation. Said directive was a statement of general applicability and future effect, within the meaning of 5 U.S.C. § 551. "Capital Directive No. 1" was made effective immediately without prior opportunity for comment, and it contained no notice of a public rulemaking proceeding and no statement that notice or public procedures were impracticable, unnecessary or contrary to the public interest, nor was there good cause for failing to provide prior notice and an opportunity to comment. Said "Directive" was not published in the Federal Register.
22. Defendant, FCA, published in the Federal Register final regulations applicable to the organization and operation of defendant Capital Corporation on March 13, 1986 and June 12, 1986. (51 Fed.Reg. 8,665-71 & 51 Fed.Reg. 21,332-36). The portions of defendant, FCA's, regulations governing the acquisition of funds by defendant Capital Corporation from system institutions, including plaintiffs, and the use of those funds to assist other institutions are contained in subsection (h) to be codified at 12 C.F.R. § 611.1142(h). These regulations were published on June 12, 1986 in final form to be effective June 13, 1986. Neither the March nor the June publication disclosed an acceptable reason for failing to publish regulations in proposed form for comment.
23. The rulemaking authority of defendant, FCA, contained in the Farm Credit Act of 1971 and the Amendments of 1985, provide authority to adopt rules and regulations, for the implementation of the Act not inconsistent with the Act's provisions. Section 611.1142 of defendant, FCA's, regulations dealing with the general corporate powers of defendant, Capital Corporation, goes beyond the specific rulemaking authority of the 1985 Act and purports to effect the rights, privileges, powers and immunities of the parties to this lawsuit in ways not authorized by the 1985 Act. Limitations written into the act on compulsory transfers protect the farmer owners of transferor institutions and prevent system self-help from becoming self-destruction. One crucial limitation is that no institution can be required to transfer an amount that would by reason of its impact on the institution's capital strength, earnings capacity, loanable funds or overall financial liability, render it unable to continue making credit available to borrowers on reasonable and competitive terms. Transfers can be compelled only pursuant to criteria that reflect, among other things, the impact of a transfer on the transferor institution's loan interest rates and the effect that any financial assistance the institution has already provided to other system institutions has had on its lending rates.
25. Subsection (m), 12 C.F.R. § 611.1142(m), creates a privilege in defendant, FCA, from the disclosure of information. Paragraph 2 of subsection (h) of § 611.1142, empowers defendant, Capital Corporation, to assess plaintiffs or to require such institutions to purchase defendant Capital Corporation's obligations upon ten (10) days notice, without any opportunity for a hearing or any appeal of defendant Capital Corporation's decision. Plaintiffs have no way to appeal, and there is no provision in the regulations allowing plaintiffs to protest. Plaintiffs have ten (10) days to submit additional data, but are not informed as to how such data fits into the formulation of their assessment, nor are plaintiffs given any notification or information on how said formula operates. Specifically, plaintiff, Delta Production Credit Association, inquired as to the formula and as to how the formula worked. No information was forthcoming from defendants, Capital Corporation or Farm Credit Administration.
*1160 26. Under § 611.1142(h) the unallocated retained earnings percentage or capital zone (assessments are based upon zone classification) of particular institutions, including those of the plaintiffs, may be adjusted by defendant, FCA, based upon various criteria, without notice or opportunity for a hearing in connection with such determinations.
27. The Farm Credit Act requires defendant, FCA's, regulations to take into account (1) the contributing institutions' relative financial strength and ability to pay, (2) the effect on current borrowers and members of each institution, including the effect on loan interest rates, and (3) requires that the regulations be designed to ensure that the capital strength, earning capacity, loanable funds and financial liability of each institution providing funds to defendant, Capital Corporation, are maintained at such a level that credit shall continue to be available to eligible borrowers on reasonable and competitive terms.
28. The Congress of the United States, in passing the 1985 Act, passed specific limitations on the ability of the FCA and the Capital Corporation to make assessments as follows:
"The power to draw on resources of other system units would be limited by provisions stating that ... the corporation's levies could not reach a point at which the financial viability of local institutions would be imperiled or at which local institutions would be left unable to make credit available to borrowers on reasonable and competitive terms."
House Report at 2 reprinted in 1985 U.S. Code Cong.Ad.News 2587, at 2588-89. Section 4.28G(a)(14), 12 U.S.C. § 2216f(a)(14), states that the Capital Corporation may impose and compel transfers only "as provided in paragraph (15)." Paragraph 15 states that the "available capital and reserves of systems institutions" shall be committed to providing financial assistance to those institutions of the farm credit system eligible therefor, but only subject to the criteria which are set forth in 12 U.S.C. § 2216f. Congress evidenced its concern that healthy associations must remain competitive and viable after transferring funds to distressed systems institutions via the Capital Corporation. The final 1985 Act which was passed by Congress set careful limits on the powers of the Capital Corporation. The Amicus brief filed by the Bank at Springfield and the one in Texas are illuminating as to the intent of Congress, and said brief and appendix thereto set out the legislative history. The Act stipulates that an institution would not be required to contribute funds if its financial liability is threatened or if it could not make credit available to its own eligible borrowers on reasonable terms.
29. To make the required assessment and to transform available capital and reserves into cash, in order to assist ailing institutions, the contributing institution ordinarily must borrow, since it will generally be impracticable to liquidate its productive assets. This was clearly understood by Congress when the 1985 amendments were enacted. See 131 Cong.Rec. H11529 (Daily ed. December 10, 1985) (Remarks of Rep. Boland); and id. at H12530 (Daily ed. December 18, 1985) (Remarks of Rep. de la Garza). Such borrowing will increase the institution's liabilities and there will be little or no corresponding increase in the interest earning assets, since the proceeds will be used to purchase instruments backed by the nonproductive loans and property that the Capital Corporation has acquired from distressed institutions. The results will be a decrease in the institutions' net worth, upward pressure on its lending rates and damage to its ability to borrow funds it needs for productive uses. The identical results will occur if cash is raised by selling assets or by borrowing.
30. Instead of providing for the limitations in the 1985 Amendments to be applied meaningfully, the regulations as promulgated ignore critical statutory limitations and employ conclusive presumptions of continued competitiveness and financial soundness and actually allow the Capital Corporation to take all of an institutions available capital and reserves. In the three *1161 clauses of § 611.1142(h)(6), the Congress directs the Capital Corporation to give consideration to certain of the limiting criteria. However, the FCA directs the Corporation to substitute for such consideration a conclusive presumption that each criterion is "deemed" satisfied if a certain condition obtains. Section (6)(i) establishes a conclusive presumption that any assessment of, or required purchase by, any institution in zone A or B, or any institution in zone C charging an interest rate below the average of all like institutions in zone C shall be "deemed" to have no effect on the institutions lending rate. Section (6)(ii) establishes a conclusive presumption that any assessment of, or required purchase by, any institution with a positive level of adjusted loanable funds shall be "deemed" to have no effect on whether the institution has the capital strength, earnings capacity, loanable funds, and over-all financial viability necessary to provide credit to eligible borrowers on reasonable and competitive terms. The presumption is contrary to the reality of the situation and the facts as seen in the evidence.
31. The self-help mechanism established by the statute has been rendered counterproductive because of the effect defendant Capital Corporation's assessment has on the above named plaintiffs. The criteria required to be taken into consideration by the Congress, in passing the 1985 Act, is not addressed or considered in the regulations, nor do the preliminary notices or the demands for assessments give any opportunity to comment on or to contest the propriety or amounts of the contributions in light of said statutory limitations. Congress never intended that farm credit institutions be made unsafe and unsound in the process of sharing financial resources with their sister institutions. Specific language in the 1985 Act state that healthy institutions must remain financially viable and competitive in the local markets served. For FCA to ignore these fundamental safeguards will only hasten the day when the farm credit system will be requested to seek financial aid from the general treasury. Letters from members of Congress, Appendix to Amicus Brief by Fed. L. Bank of Springfield, at Tab 5. This Court finds that, in actuality, the regulations circumvent any reasonable determination of competitiveness or viability by defining these conditions in terms that have no bearing on actual competitiveness in the local market or any market, or the institution's earnings capacity, or in future net worth position. In addition, competitiveness on the basis of the average rates charged by similar system institutions completely ignores the variation in local market conditions, and is a highly inappropriate and arbitrary way to determine an institution's competitive position.
32. The result of the regulation and the assessment is that plaintiffs' capacity to continue making credit available to eligible borrowers on reasonable and competitive terms is no longer available. Plaintiffs' earning capacity would be directly diminished. Plaintiffs' loanable funds would be reduced. Plaintiffs' interest rates would have to be raised. The amount of assessments against the plaintiffs would totally destroy their ability to make credit available on reasonable and competitive terms.
33. Plaintiff institutions have employed conservative lending policies which have enabled them to build up unallocated retained earnings over a period of years through farmer-owners' forgoing immediate financial benefits for the sake of the long term welfare of their local institutions, and the attendant benefit to themselves.
34. Plaintiffs have no adequate remedy at law in that they will be irreparably injured through the assessments. There is absolutely no question from the testimony in this case that there is a clear present and future damage. Damage and loss is certain to occur if the proposed assessments are allowed to go forward, both to plaintiffs and to their local farmer borrowers.
35. Plaintiffs and defendants have presented all evidence and arguments to the court which each intend to present, and therefore the record is complete. Therefore, *1162 pursuant to Rule 65, this hearing on the preliminary injunction is consolidated with the trial on the merits, and the injunction granted herein is made permanent and final. The Court further finds that plaintiffs are likely to prevail, and have prevailed, on the merits; that without such relief plaintiffs will suffer irreparable injury; that the issuance of the injunction is in the best interest of the Farm Credit System; and that it is in the public interest to grant the relief requested.

Conclusions of Law
1. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2201-2202, the Farm Credit Amendments Act of 1985, the Administrative Procedure Act, and 28 U.S.C. §§ 1331, 1346.
2. Venue is proper in this district under 28 U.S.C. § 1391(e). Exxon Corp. v. Federal Trade Commission, 588 F.2d 895 (3rd Cir.1978).
3. The Court consolidates the application for preliminary relief with trial on the merits pursuant to Rule 65(a)(2).
4. The regulations as promulgated under authority of 12 U.S.C. § 2152, 2216f, are not within the scope of intent of Congress in passing the Farm Credit Amendment Act of 1985, Pub.L. No. 99-205, 99 Stat. 1678. Emergency rule making is not authorized under the administrative procedure act; defendants' regulations were not promulgated after publication in proposed form for comment by interested persons, nor was their effectiveness delayed as required by law. The actions of defendant, FCA, in adopting § 611.1142 of its regulation were in excess of its statutory authority and short of its statutory right in light of the legislative history and the plain meaning of the Farm Credit Amendment Act of 1985. The regulations deny plaintiffs due process of law in failing to provide an opportunity for a hearing in connection with assessments and required contributions. Where the decision maker has a direct financial interest in determining all of the issues under the regulations in a matter adverse to plaintiff's interest, plaintiff's inability to contest or appeal is a denial of due process. The regulations illegally fail to consider the elements required to be taken into account under the 1985 Act; and, the regulations are contrary to reality and fact.
5. The regulations do not as required by § 4.28G(a)(15) of the Farm Credit Act ensure the maintenance of transferor institutions' capital strength, earning capacity, loanable funds and overall financial liability at levels necessary for each such institution to continue to make credit available to eligible borrowers on reasonable and competitive terms. Rather, the regulations, deem that this requirement is satisfied wherever a transferor institution has a positive level of adjusted loanable funds. This deeming nullifies the statutory mandate to the FCA to specify detailed criteria that limit compelled transfers to only those amounts consistent with ensuring the continued ability of a transferor institution to provide credit on reasonable and competitive terms. § 611.1142(h)(6)(ii).
6. The statute in § 4.28G(a)(15) directs the FCA to formulate criteria to take account of the compelled transfers on loan interest rates. The regulations in § 611.1142(h)(6)(i), deem that an assessment, regardless of its amount, will have no effect on the lending rate of any institution that is in Zone A or B or that is in Zone C and is charging an interest rate below the average of all like institutions in that zone. This presumption regarding the effect of assessments on lending rates is arbitrary and capricious.
7. Regulations, in order to be valid, must be consistent with the statute under which they are promulgated. U.S. v. Larionoff, 431 US 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). An agency's interpretation can not supersede the language chosen by Congress or alter or amend a law of Congress. Monhasco Corp. v. Silver, 447 US 807, 825, 100 S.Ct. 2486, 2496, 65 L.Ed.2d 532 (1980). Regulations that are inconsistent with a statute *1163 must be set aside as contrary to law. Cheshire Hospital v. New Hampshire-Vermont Hospitalization Service, Inc., 689 F.2d 1112, 1118 (First Cir.1982); Administrative Procedure Act, 5 U.S.C. §§ 701-706. The proper remedy in this case is for the regulations to be declared contrary to law and set aside and for the defendants to be permanently enjoined from acting pursuant to them.
8. The regulations are arbitrary and capricious. They deny plaintiffs due process in that they take property which is clearly the property of the local farmer owners of the Production Credit Associations, without compensation. This taking is a denial of due process and there is no adequate remedy at law because of the immediate irreparable injury. To allow plaintiffs to sue under the Tucker Act would not reverse the immediate injury on local farmers who are unable to obtain credit as the PCAs are now going into the lending season. Additionally, irreparable harm to the public and to the movants is presumed in this case because equitable requirements are satisfied per se when a violation of Federal law, including the Administrative Procedure Act, is shown. Current-Jacks Fork Canoe Rental Assn. v. Clark, 603 F.Supp. 421, 427 (E.D.Mo.1985). Loss of business opportunities constitute irreparable harm. Id.
Certainly, putting local farmers entirely out of business and causing their bankruptcy, would be contrary to the very heart of the 1985 Amendments.
9. The regulations are invalid for failure to observe the Administrative Procedure Act requirements of notice and opportunity to comment on proposed rules. 5 U.S.C. § 553. Capital Directive No. 1 and 611.1142 are adopted in violation of the rulemaking procedures of 5 U.S.C. § 553 & § 552. The regulations were published in final form with neither a prior notice of public rulemaking proceedings nor good cause for failing to provide notice and an opportunity to comment. Effective dates of the regulations were neither delayed for at least thirty (30) days nor was there good cause for failing to delay the effective dates.
10. Plaintiffs have been denied due process in that no notice was given and no hearing is available in determining when, who, or how much any system institution is to contribute by way of assessment for stock purchase. Capital Corporation makes all decisions and is the final arbitrator, with no right of appeal.
11. Defendant, FCA's, actions in issuing § 611.1142 concerning defendant, Capital Corporation, were unlawful within the meaning of 5 U.S.C. § 706 in that the same were arbitrary, capricious, an abuse of discretion, not in accordance with law, contrary to constitutional right, power, privilege and immunity, and in excess of statutory jurisdiction, authority, limitations and short of statutory right. The regulations are contrary to plaintiffs' constitutional rights not to be deprived of private property without due process of law. The regulations fail to take into account the effect on current Farm Credit System borrowers including the effect on loan interest rates, and fail to ensure the financial viability of plaintiffs. 5 U.S.C. § 706.
12. Final judgment should be entered declaring that the regulations promulgated by the FCA at 12 CFR § 611.1142 are contrary to law and void. Any required purchase or assessment pursuant to said regulations are invalid.

JUDGMENT
Findings of fact and conclusion of law dated October 14, 1986 hereby are incorporated herein and made a part of this judgment.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment be and hereby is entered in favor of plaintiffs, Sikeston Production Credit Association, Delta Production Credit Association and Southern Illinois Production Credit Association, *1164 and against defendants, Farm Credit Administration and Farm Credit System Capital Corporation.
FURTHER, IT IS ORDERED, ADJUDGED AND DECREED that the Temporary Restraining Order entered on the 30th day of September, 1986 is hereby made permanent; and defendants, their officers, agents, servants, employees and attorneys and other persons acting in consort or in participation with them be and hereby are restrained and enjoined as follows:
From taking any action against the above named plaintiffs under authority of the memorandum styled "Capital Directive No. 1" and Section 611.1142 of defendant, FCA's, regulations thereunder (51 FR 8,655-71 & 21,332-36).
FURTHER, IT IS ORDERED, ADJUDGED AND DECREED that the regulations promulgated under authority of Sections 103 and 104 of the Farm Credit Amendment Act of 1985, Pub.L. No. 99-205, 99 Stat. 1678, 12 U.S.C. § 2216 et seq., as to these plaintiffs, are unconstitutional in that they deprive the plaintiffs of their property without due process of law. All regulations written in connection with and as part of 12 U.S.C. § 2216f are all set aside and for naught held because they are vague and indefinite and shall not be applied as to these plaintiffs.
FURTHER, IT IS ORDERED ADJUDGED AND DECREED that defendants, Farm Credit Administration and Farm Credit System Capital Corporation are permanently enjoined from making any assessments against these plaintiffs or requiring purchases of obligations by these plaintiffs pursuant to any existing regulations issued and promulgated pursuant to the Farm Credit Amendment Act of 1985.
Costs are assessed against the defendants.
This Order is made pursuant to Rule 60(a).
SO ORDERED this 21st day of October, 1986.