**Guilermina RUIZ, Rodolfo Villagomez, Antonio Lopez Angelica Ortiz, Rafael Luna, Angelica Sanchez, Jose Juan Padron & J. Guadalupe Lopez, Plaintiffs,**

v.

**NEW GARDEN TOWNSHIP, Robert N. Traylor, Willard H. Smedley, Patrick J. Keeney, Norman S. Nunn, Frank J. Zagorskie, the Zoning Hearing Board of New Garden Township, David Carlin, Angelo Zunino & James Diluzio, Defendants.**

No. 01–CV–5081.

United States District Court, E.D. Pennsylvania.

Nov. 7, 2002.

*Id.*

Robert F. Salvin, West Chester, PA, for Plaintiffs.

George A. Brutscher, Brutscher, Brutscher & Foley, Kennett Square, PA, Kristine M. Maciolek, Cozen & O'Connor, West Conshohocken, PA, Arthur W. Lefco, Marshall Dennehey Warner Coleman & Goggin, Philadelphia, PA, William J. Gallagher, Timothy F. Rayne, Mac Elree, Harvey, Gallagher & Featherman, Ltd., West Chester, PA, for Defendants.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

#### A. The Facts

The plaintiffs, who are all Mexican immigrants working in the local mushroom industry, are residents of mobile homes on 18 acres of land ("the property") in New Garden Township, Pennsylvania ("the Township"). The property is owned by Dante and Lucy DiUbaldo ("DiUbaldo"), and is located in the C–1–2 Zoning District of the Township. The property has been classified as C–1–2 since April 1989. In 1991, one of the existing mobile homes was placed on the property, and no other permit was applied for until DiUbaldo submitted a land development plan in June 2000. Although the property had never been zoned for use as a mobile home park, over a period of years, DiUbaldo installed twelve mobile homes on the property. The plaintiffs have oral month to month leases with DiUbaldo to pay rent for occupancy of the mobile homes in amounts ranging from $500–600. DiUbaldo and the plaintiffs also have an oral agreement that no tenant shall be evicted from a mobile home without cause, so long as he remains a tenant in good standing.

On June 22, 2000, the Township issued an enforcement notice against DiUbaldo as the owner of record of the property, informing him that the placement of eleven of the twelve mobile homes on the property violated the Township's zoning ordinance.[1] The enforcement notice was served solely upon DiUbaldo and not upon the mobile home tenants. DiUbaldo filed an appeal of the enforcement notice with the Zoning Hearing Board ("the Board"). On October 3, 2000 Notice of the Hearing of DiUbaldo's appeal was publicly advertised in the newspaper. DiUbaldo appealed the enforcement notice in hearings before the Board on November 15 and December 13, 2000. The plaintiffs did not appear or participate in these proceedings.

On January 23, 2001, the Board issued a decision holding that under the zoning or-

---

1. Although not material to this case, DiUbaldo was separately cited by the Health Department on November 29, 1999 for violations concerning the property's sewage system and on March 15, 2000 by the Food and Housing Division for electrical violations. Preliminary Injunction Hearing Transcript ("Tr.") at p. 51–58.

dinance the mobile homes were not permitted on the property located in a C–1–2 zoning district and directed that DiUbaldo serve Notices to Quit on the tenants of the mobile homes to vacate the premises by July 1, 2001. On March 1, 2001, DiUbaldo complied with the Board's Order by serving the plaintiffs with Notices to Quit.[2] The plaintiffs allege that this was the first time that DiUbaldo informed them of the Township's enforcement action and Order to DiUbaldo that he serve Notices to Quit on the plaintiffs. DiUbaldo testified that he told the plaintiffs of the Zoning Board's enforcement action and Order when he received the enforcement notice in writing. Tr. at 47, 63. The testimony of plaintiff Antonio Lopez, however, contradicts DiUbaldo's testimony. Lopez testified that he first heard of the zoning enforcement action from DiUbaldo via letter in March of 2001. *Id.* at 89, 91. Likewise, plaintiff Rafael Luna testified that he became aware of the zoning enforcement hearing for the first time at some point in 2001. The enforcement notice was issued to DiUbaldo on June 22, 2000. *Id.* at 103. I find that the plaintiffs did not receive actual notice.

Because the plaintiffs did not leave the property by July 2, 2001, DiUbaldo filed eviction actions against the tenants before the local district justice. On August 22, 2001, the local justice entered judgment for possession in favor of DiUbaldo against the plaintiffs. DiUbaldo obtained judgments of possession against Guilerima Ruiz, Antonio Lopez, Antonio Ortiz, Rafael Luna, and J. Guadalupe Lopez, but did not obtain judgments against Rodolfo Villagomez, Angelica Sanchez, and Jose Juan Padron. The five plaintiffs against whom DiUbaldo obtained judgments of possession appealed to the Court of Common Pleas of Chester County. By agreement with DiUbaldo these actions have been stayed, and therefore plaintiffs remain in possession of the property and the Township has not fined DiUbaldo.

On October 9, 2001, the plaintiffs filed a motion for a temporary restraining order/preliminary injunction to enjoin the January 23, 2001 Order of the Board that required DiUbaldo to serve Notices to Quit upon the plaintiffs. The plaintiffs also requested an award of damages, if necessary, compensating them for the loss of their homes, moving expenses, the mental and emotional distress accompanying the events, attorney's fees, and any other appropriate relief. The Township moved to dismiss the case on two grounds: (1) failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6); and (2) failure to join DiUbaldo as an indispensable party pursuant to Fed. R. Civ. P 12(b)(7) and 19. On December 11, 2001 a hearing was held on the preliminary injunction. On May 31, 2002, the parties agreed to convert the preliminary injunction motion into one for a permanent injunction under Fed R. Civ. P. 65(b). The Township was entitled to begin collecting fines on July 2, 2001 against DiUbaldo, and, in turn, DiUbaldo could have raised the plaintiffs rent, but by agreement of the parties they have refrained from doing so.[3]

---

**2.** During this same period, DiUbaldo filed a conditional use application with the Township, requesting permission to use the property for lease of the mobile homes. Hearings on the DiUbaldos' conditional use application were held on April 11, 2001 and May 16, 2001, and the Board denied the conditional use application on May 21, 2001.

**3.** The parties dispute whether the defendants posted Notice of the Hearing on the property. Lefevre, the zoning officer, testified that it was his "custom, habit and practice" to post Notices of Enforcement hearings. But, Lefevre never returned the "affidavit of posting" to Winifred Moran Sebastian, the lawyer for the Board. The plaintiffs argue that the ab-

## B. Jurisdiction

This is a federal civil rights proceeding arising under 42 U.S.C. § 1983. Subject matter jurisdiction is proper, therefore, under 28 U.S.C. §§ 1343 and 1331. Supplemental jurisdiction is proper over the plaintiffs' state law claims under 28 U.S.C. § 1367.

## C. Standard for a Permanent Injunction

In deciding whether a permanent injunction should issue, a court must consider whether: (1) the movant has shown actual success on the merits; (2) the movant will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the non-moving party; and (4) the injunction would be in the public interest. *See Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir.2001).

### 1. Actual Success on the Merits

■ The plaintiffs must prove actual success on the merits. The plaintiffs claim that the defendants deprived them of their rights to procedural due process by failing to provide them with actual notice of the enforcement action and an opportunity to be heard before the Board.[4]

To establish a claim for a violation of procedural due process, the plaintiffs must prove by a preponderance of the evidence that: (1) they have a protected property interest in their leases, (2) of which they were deprived without due process, (3) by persons acting under color of state law. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *DeBlasio v. Zoning Bd. of Adjustment for the Township of West Amwell*, 53 F.3d 592, 597 (3d Cir.1995); *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir.1991).

### (a) Protected Property Interest

■ An interest in property becomes protected by the due process clause when a "legitimate claim of entitlement" is created by an independent source like state law. *Midnight Sessions*, 945 F.2d at 679 (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548

---

sence of the affidavit confirms that Notice of the Hearing was never posted on the property by Lefevre. The parties also dispute availability of low income housing in and around New Garden Township. Finally, they disagree as to whether DiUbaldo would raise the plaintiffs' rent to $3000 per month to cover the amount he would pay per month in fines ($500 per day) to the Township. These disputes are not material to this case.

4. In addition to their claim that the defendants violated their rights to due process, the plaintiffs claim that the defendants violated 53 Pa. Stat. Ann. § 10616.1 by not providing them with notice of the Board's proceeding. Section § 101616.1 requires that a notice of the enforcement action be sent to the "owner of record." The plaintiffs argue that the word "owner" should be defined in reference to the statutory definition provided for the word "landowner." Under 53 Pa. Stat. Ann. § 10107(a) "landowner" is defined as "the legal or beneficial owner or owners of land including the holder of an option or contract to purchase ..., a lessee if he is authorized under the lease to exercise the rights of the landowner, *or other person having a proprietary interest in the land.*" (emphasis added). The plaintiffs seize on the last clause to support their argument that they qualify as "landowners" under § 10107(a) and that "owner" under § 10616.1(b) should be read to include all "landowners."

This claim fails because it violates the plain meaning of § 10107(a) and § 10616.1(b). *See Commonwealth v. Harner*, 533 Pa. 14, 20, 617 A.2d 702, 705 (1992) (holding that "when the language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and common meaning").

(1972)). Pennsylvania law establishes this legitimate claim of entitlement to a leasehold. Under Pennsylvania law a party with an interest in leased property has the right to possession of the property exclusive of all others including a holder of the underlying fee. "A lease is a sale and conveyance of the property leased" and differs from a deed only because it is limited to a certain term and leaves a reversionary interest in the grantor, so " '[f]rom the moment of letting, the land becomes the tenant's, and remains such until the lease terminates; the house, if there be one, is his castle....' " *Commonwealth of Pennsylvania v. Monumental Properties, Inc.*, 459 Pa. 450, 470–72, 329 A.2d 812, 822–23 (Pa.1974) (quoting *Wien v. Simpson*, 2 Phila. 158, 158 (1858)); *Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.*, 552 Pa. 412, 715 A.2d 1082 (1998); *Berrios v. City of Lancaster*, 798 F.Supp. 1153, 1157 (E.D.Pa. 1992). Thus, an interest in leased property in Pennsylvania qualifies for protection under the due process clause.

Also, under Pennsylvania law the definition of a leaseholder includes an oral month-to-month lessee. Pennsylvania Landlord and Tenant Act of 1951, 68 Pa. Stat. Ann. § 250.101 *et. seq.* provides that property may be leased for a term of not more than three years, "by oral or written contract or agreement." An oral month-to-month lease is a leasehold interest less than three years, and therefore is a property interest protected the same as any other lease. *See Berrios*, 798 F.Supp. at 1157 (Although in dicta, the court in *Berr-*

*ios* noted that the plaintiffs had a property interest in their month-to-month oral leases under Pennsylvania law. *Berrios*, 798 F.Supp. at 1157. As part of this determination, the court stated that, "[a]ny type of lease, whether it is a written or oral lease or a periodic tenancy only affects the amount of compensation due in the individual situation."). Thus, under Pennsylvania law a holder of an oral month-to-month lease is no less a holder of a property interest than any other leaseholder. I conclude that under Pennsylvania law the plaintiffs have a protected property interest in their month-to-month oral leases with DiUbaldo of the mobile homes located on the property.[5]

### (b) Deprivation of a Protected Property Interest Without Due Process

■ The plaintiffs were unlawfully deprived of their protected property interest in their month-to-month oral leases without due process of law when the Board failed to provide them with actual notice of the zoning hearing, a hearing that resulted in the plaintiffs receiving Notices to Quit their property, that is, notices of eviction.

■ In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not itself unconstitutional; an unlawful deprivation of such an interest is one effected without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). Due process "is not a technical conception with a fixed content unrelated to time, place, and circum-

---

**5.** This finding is consistent with the holdings of other federal courts, including the United States Supreme Court, which have considered whether a month-to-month oral lease constitutes a protected property interest under the laws of states other than Pennsylvania. *See United States v. Petty Motor Co.*, 327 U.S. 372, 374–75, 66 S.Ct. 596, 598–99, 90 L.Ed. 729

(1946) (finding that the plaintiffs had a protected property interest in their oral month-to-month leases under Utah law); *Ward v. Downtown Dev. Auth.*, 786 F.2d 1526 (11th Cir.1986) (stating that the plaintiffs have a compensable property interest in their month-to-month oral leases under Florida law).

stances." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). To decide what procedural safeguards the Constitution requires in a particular case, a court weighs three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* Applying this test, the Supreme Court has held that the Constitution requires some kind of notice and some kind of hearing before the State deprives a person of liberty or property. *See Zinermon,* 494 U.S. at 127, 110 S.Ct. 975; *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) (stating that at a minimum due process requires "*some* kind of notice ... and *some* kind of hearing") (emphasis in original); *Mullane,* 339 U.S. at 314–15, 70 S.Ct. 652 (providing that "[a]n elementary and fundamental requirement of due process ... is [that the] notice [must be] reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). Notice "is constitutionally adequate when the practicalities and peculiarities of the case are reasonably met." *Mullane,* 339 U.S. at 314–15, 70 S.Ct. 652. Whether a certain method of notice is reasonable depends upon the outcome of the balance between the "interest of the State" and "the individual interest sought to be protected by the Fourteenth Amendment." *Id.*

In *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Supreme Court articulated the proper balancing in a case

such as the one before me. *Mennonite,* in conjunction with *Mullane,* guides the analysis of whether the plaintiffs were entitled to actual notice of the Board's hearings. In *Mennonite,* the Court considered whether the property interest of a mortgagee was significantly affected by a tax sale so as to entitle it to more than the constructive notice required under Indiana law. *Mennonite* involved the sale of real property for delinquent taxes. Indiana state law provided for a two year period following any such tax sale during which the owner or lienholder could redeem the property. After expiration of the redemption period, the purchaser at the tax sale could apply for a deed. The property owner received actual notice of the tax sale and the redemption period, but all other interested parties were given notice by publication only. The mortgagee complained to the courts that the State's failure to provide it with actual notice of the tax sale and redemption period violated due process. The Supreme Court held that because a mortgagee possesses a "substantial property interest that is significantly affected by a tax sale," the mortgagee is entitled to notice reasonably calculated to apprise it of a pending tax sale. *Mennonite,* 462 U.S. at 798, 103 S.Ct. 2706. In *Mennonite,* the tax sale "immediately and drastically" diminished the value of the mortgagee's security interest in the property by granting the tax sale purchaser priority over all other creditors. *Id.* The instant case is analogous to *Mennonite.* Loss of the plaintiffs' leasehold satisfies the *Mennonite* test. The plaintiffs' property interests were immediately and drastically diminished by the Board's Order that DiUbaldo serve the plaintiffs with Notices to Quit.

In *Mennonite,* the Court further held that notice by mail, or otherwise "as certain to ensure actual notice" to the proper-

ty owner, "is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party no matter how sophisticated if the name and address of the party are reasonably ascertainable." *Id.* at 800, 103 S.Ct. 2706 (emphasis in original). The present plaintiffs were reasonably ascertainable because the Board could have readily identified their names and addresses with "reasonably diligent efforts." *Id.* at 798 n. 4, 103 S.Ct. 2706. The plaintiffs lived on the same parcel of land, 320 Ellicot Road in Avondale, Pennsylvania, that was the target of the zoning action. There were only twelve mobile homes on the property. The Board's burden of providing actual notice under these circumstances was slight measured against the additional procedural safeguard afforded by actual notice. Thus, the plaintiffs were reasonably ascertainable for the purposes of receiving actual notice.

■ *Mennonite* and *Mullane* still leave unclear how to determine precisely which property owners will be significantly affected by a proceeding for the purposes of providing actual notice. *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) is instructive on this issue. In *Zinermon,* the plaintiff mental patient brought suit against staff members of the state mental hospital on the grounds that they knew or should have known that he was incompetent, and nonetheless admitted him as a voluntary patient in violation of his constitutional rights. The Court held that it was "foreseeable" and "predictable" that the plaintiff would be deprived of a substantial liberty interest without either valid consent or an involuntary placement hearing because the very nature of mental illness makes it foreseeable that a person requiring mental health care will be unable to provide informed consent. *Id.* at 139, 110 S.Ct. 975. Thus,

*Zinermon* recognizes that notice and an opportunity to be heard are required where it is foreseeable and predictable that a person's protected interest will be substantially affected by state action.

■ The plaintiffs were entitled to actual notice of the hearings that resulted in the Board's January 23, 2001 Order that DiUbaldo serve the plaintiffs with Notices to Quit because, under the totality of the circumstances, it was predictable that the Board's hearing would have a significant affect on the plaintiffs' property interests in their leases. *Zinermon,* 494 U.S. at 139, 110 S.Ct. 975; *see also Mennonite,* 462 U.S. at 800, 103 S.Ct. 2706; *Mullane,* 339 U.S. at 314–15, 70 S.Ct. 652. The Board had to know that when it considered whether the mobile homes on the property were violating the ordinance, the property interests of the plaintiffs would be substantially affected by the outcome of the hearing. Taken together, *Mullane, Mennonite,* and *Zinermon* require actual notice where it is predictable that governmental action will have a significant affect on the protected property interests of reasonably ascertainable parties.

The defendants raise three arguments to support their position that the plaintiffs were not entitled to pre-deprivation notice and a hearing. First, the defendants argue that the Board was simply enforcing the Township's ordinance pursuant to its determination that DiUbaldo permitted the mobile homes on the property in violation of the ordinance. In the defendants' view, then, the plaintiffs were afforded adequate due process because the defendants complied with the requirements of the Pennsylvania Municipal Planning Code ("MPC") 53 Pa. Stat. Ann. § 10616.1 which provides:

 (a) If it appears to the municipality that a violation of any zoning ordinance ... occurred, the municipality shall initiate

enforcement proceedings by sending an enforcement notice as provided in this section.

(b) The enforcement notice shall be sent to the owner of record of the parcel on which the violation has occurred, to any person who has filed a written request to receive enforcement notices regarding that parcel, and to any other person requested in writing by the owner of record.

The plaintiffs did not file any written requests to receive notice of enforcement proceedings concerning the property. Thus, the defendants argue that the Notice of Enforcement provided to DiUbaldo alone, the "owner of record of the parcel," was sufficient to satisfy the requirements of due process because the notice complied with § 10616.1, and that the plaintiffs do not attack the constitutionality of § 10616.1. While the plaintiffs do not claim that § 10616.1 is unconstitutional on its face, they contend that the defendants violated their procedural due process rights because of the manner in which the MPC was applied against them. The plaintiffs argue that the effect of the Board's proceedings was that the plaintiffs were served with Notices to Quit by DiUbaldo, and that this result should have been anticipated by the Board before the proceedings began. The plaintiffs maintain that in that way the Board violated their procedural due process rights by not providing them with notice and an opportunity to be heard prior to the alleged deprivation.

Pennsylvania authorizes municipalities to establish zoning boards with the power to effect deprivations of property. *See* 53 Pa. Stat. Ann. § 10601 *et. seq.* (West 2002). Because the Board has state authority to deprive persons of property, "the Constitution impose[s] on them the State's concomitant duty to see that no deprivation occur[s] without adequate pro-

cedural protections." *Zinermon,* 494 U.S. at 135, 110 S.Ct. 975. Section 10616.1 does not necessarily define the scope of the zoning officials' duty to ensure that the Board follows proper procedures before instituting proceedings which will significantly affect protected property interests. Thus, zoning officials cannot rely on § 10616.1 to shield themselves from liability for violations of procedural due process.

Second, the defendants argue that the plaintiffs have an adequate post-deprivation remedy against DiUbaldo under the terms of their leases, and therefore that their procedural due process claim fails under *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (*overruled on other grounds Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)) (holding that a state tort law remedy was all the process the plaintiff was due because any pre-deprivation procedural safeguards that the State did, or could have, provided would not have addressed the risk of the deprivation). *Parratt* applies to situations in which: (1) a "random and unauthorized" act of a government official caused a deprivation of liberty or property; (2) that resulted in the deprivation of liberty or property without adequate procedural due process; (3) the plaintiff seeks a post-deprivation remedy; (4) the plaintiff could seek only a post-deprivation remedy because pre-deprivation process was impossible; and (5) adequate state remedies exist. *See Zinermon,* 494 U.S. 113, 128–29, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); Erwin Chemerinsky, *Federal Jurisdiction* § 8.9, at 545 (3d ed.1999). In *Parratt,* pre-deprivation process was "impracticable" because the state could not know that the deprivation would occur. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984) (stating that part of the underlying rationale of *Parratt* is that "[t]he state can no more anticipate

and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct"). Unlike *Parratt,* this case does not involve any "random and unauthorized" conduct. Pre-deprivation process was practicable here because it was predictable that the Board's hearings would have a significant affect upon the plaintiffs' property interests. Thus, *Parratt* is inapplicable.

Finally, the defendants argue that because the plaintiffs do not have a plausible argument that the Board decision was wrong, the plaintiffs' due process rights were not violated. The plaintiffs claim that, if granted an opportunity, they will argue that the mobile homes are an expansion of a pre-existing non-conforming use. In response, the defendants point out that at least some of the plaintiffs advanced this same argument at the conditional use hearing before the Board and that the matter is now before the Chester County Court of Common Pleas.

Thus, the defendants argue that before receiving notice and a hearing, the plaintiffs must be able to show that they would have prevailed at the hearing. The defendants' argument is without merit. The right to be heard "does not depend upon an advance showing that one will surely prevail at the hearing." *Fuentes v. Shevin,* 407 U.S. 67, 87, 92 S.Ct. 1983, 1987, 32 L.Ed.2d 556 (1972). Moreover, "[t]o one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits." *Coe v. Armour Fertilizer Works,* 237 U.S. 413, 424, 35 S.Ct. 625, 629, 59 L.Ed. 1027 (1915). The plaintiffs need not show that they would have succeeded before the Board in order

to establish a claim for violation of due process.

### (c) Under Color of State Law

The traditional test of "acting under color of state law" requires that a defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1042–43, 85 L.Ed. 1368 (1941)). Acts of a state or local employee generally will be found to have occurred under color of state law. *Id.; Flagg Bros. v. Brooks,* 436 U.S. 149, 157 n. 5, 98 S.Ct. 1729, 1734 n. 5, 56 L.Ed.2d 185 (1978). The hearings presided over by the defendants took place under the authority of state law. The defendants also acted under color of state law when they ordered DiUbaldo to serve the plaintiffs with Notices to Quit.

### 2. Irreparable Harm

A court must also consider the possibility that the plaintiff will be irreparably harmed if the injunction is not granted. Irreparable harm is injury that cannot be adequately compensated by monetary relief. *Morton v. Beyer,* 822 F.2d 364, 372 (3d Cir.1987). What constitutes irreparable harm in a particular case is dependent on the particular circumstances of the case. *See Oburn v. Shapp,* 521 F.2d 142, 151 (3d Cir.1975). A number of courts have held that "when an alleged deprivation of a constitutional right is involved, no further showing of irreparable injury is necessary." *Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir.1984) (quoting 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948, at 440 (1973)); *Jolly v. Coughlin,* 76 F.3d 468,

482 (2d Cir.1996) (holding that a "presumption of irreparable injury ... flows from a violation of constitutional rights"); *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524 (9th Cir.1993); *see also Sikeston Production Credit Ass'n. v. Farm Credit Admin.,* 647 F.Supp. 1155, 1163 (E.D.Mo.1986); *Heublein, Inc., v. Federal Trade Commission,* 539 F.Supp. 123, 128 (D.Conn.1982).

 The Court of Appeals for the Third Circuit, however, has held that constitutional harm does not necessarily constitute irreparable harm. *See Hohe v. Casey,* 868 F.2d 69, 73 (3d Cir.1989) (holding that a simple assertion of First Amendment rights does not automatically require a finding of irreparable injury). In *Hohe,* the Third Circuit found that because the plaintiffs were entitled to compensatory damages they would not suffer irreparable harm. The present plaintiffs are not entitled to compensatory damages.[6] Here, the irreparable harm consists not merely in the asserted due process violation, but in the fact that the plaintiffs will be displaced from their homes, a circumstance that would be especially intolerable without an opportunity to be heard. *See Butler v. United States Dep't Housing and Urban Development,* 595 F.Supp. 1041, 1046 (E.D.Pa.1984) (holding that failure to enjoin HUD and the Federal National Mortgage Association from foreclosing the plaintiffs mortgage without reconsideration of the plaintiffs' application for mortgage assignment will cause the plaintiffs irreparable injury because it "may lead to loss of [the plaintiffs'] home"). The plaintiffs, therefore, have satisfied this requirement.

**6.** While the plaintiffs seek monetary damages, there is no evidence that the plaintiffs have actually suffered monetary damages. The plaintiffs may be entitled to nominal damages, however, for the due process violation. *See*

### 3. Harm to the Non–Moving Party

 Next, a court must assess the potential for harm to the non-moving party. The defendants argue that they will be harmed because: (1) the Township will have to permit a mobile home park to remain on the property in violation of the zoning ordinance and (2) the Township will not be permitted to collect the fines levied against DiUbaldo for violating the zoning ordinance. Merely providing the plaintiffs with an opportunity to present their case before the Board does not mean that the Township cannot enforce the ordinance or eventually collect fines from DiUbaldo. Therefore, granting the permanent injunction will not inflict cognizable harm to the defendants.

### 4. Public Interest

 Finally, a court must consider whether the public interest favors granting the permanent injunction. Analysis of this factor "is another way of inquiring whether there are policy considerations that bear on whether the order should issue." 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.4, at 200–01 (1973). While enforcement of zoning ordinances generally promotes the public interest, the public interest would best be served under these circumstances by providing the plaintiffs with notice and an opportunity to be heard before the Board. *See Industrial Park Development Co. v. EPA,* 604 F.Supp. 1136, 1145 (E.D.Pa.1985) (stating that "there is a compelling public interest in oversight of governmental actions which deprive individuals of generally protected property interests"); *Bowman v. Township of Penn-*

*Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (holding that absent evidence of an actual injury resulting from a due process violation, plaintiffs can recover only nominal damages).

*sauken,* 709 F.Supp. 1329, 1348 (D.N.J. 1989).

### D. Conclusion

In conclusion, I find that the plaintiffs have demonstrated success on the merits of their procedural due process claim against the defendants, that the plaintiffs will suffer irreparable injury if the defendants are permitted to proceed to enforce the ordinance without affording the plaintiffs notice and an opportunity to be heard before the Board, and that the balance of hardships and public interest weigh in favor of granting injunctive relief. Accordingly, I will grant the plaintiffs' request for permanent injunctive relief. An appropriate Order follows.

### ORDER

**AND NOW,** this day of November 2002, it is **ORDERED** that:

(1) the plaintiffs' motion for a permanent injunction preventing the defendants from enforcing its January 23, 2001 Order of eviction is **GRANTED**.

(2) the defendants' motion to dismiss the claims of the plaintiffs (Docket Entry # 10) and the plaintiffs' motion to amend the record (Docket Entry # 21) are **DENIED AS MOOT**.

(3) If the defendants reschedule a hearing on the appeal of the enforcement notice of June 22, 2000 to the Zoning Hearing Board, they shall provide notice to the plaintiffs consistent with this opinion.